## Richmond.

### BOND ET AL. v. PETTIT ET AL.

#### December 15th, 1892.

1. TAX TITLES—*Statutes.*—Statutes providing for sale of lands delinquent for non-payment of taxes must be strictly construed, such sales being forfeitures. *Wilson* v. *Ball*, 7 Leigh 22; *Boon* v. *Simmons*, 87 Va. 259.

2. IDEM—*Sales—Report—Case at bar.*—Report of officer selling land as delinquent for taxes, not sworn to until one year after day of sale, showing that the land-owners were chargeable with the delinquent taxes. the quantity of land, the amount of taxes and penalty, and the amount of liens and penalty, the aggregate whereof making the amount of purchase-money at which the claimant became purchaser at the sale, but entirely omitting the residence of the owners, the estate held, the local description of the land, the distance and bearing from the court-house, and amount of county levy, and mis-stating the years for which the taxes were delinquent—

HELD:

    Not to be in conformity with the requirements of the statute under which the sale was made, and the purchaser acquired no valid title to the land.

3. *Flanagan* v. *Grimmet*, 10 Gratt. 421, and the act of February 9th, 1814, (2 Rev. Code, § 542,) under which that decision was made, compared with Code 1873, ch. 38, under which the present case arose.

Appeal from decree of circuit court of Orange county, rendered October 4th, 1889, in a suit wherein Smith Pettit and J. Dripps were complainants and R. H. Bond and Philip H. Fry, clerk of the county court of said county, were defendants.

The object of the suit was to perpetually enjoin and restrain said Bond from demanding and receiving, and said Fry, clerk as aforesaid, from making a deed of conveyance to a certain

tract of 448½ acres of land, more or less, in Orange county, returned delinquent, in the name of said Pettit and Dripps, for the non-payment of taxes for the years 1879, 1880, and 1881, and claimed by said Bond to have been regularly sold, at public auction, on the 23d day of August, 1886, and purchased by him at that sale.

The plaintiffs, in their bill, after setting forth that they are non-residents of the state of Virginia, but residents of the city of Washington, D. C., allege that they are the owners of a certain tract of land in the county of Orange, state of Virginia, containing 448½ acres, more or less, which was conveyed to them by Anna G. Nason by deed, dated the 4th day of May, 1877, which deed is exhibited with the bill, marked " A "; that without their knowledge, and by reason of some oversight which they cannot explain, said tract of land was returned delinquent for non-payment of taxes for the years 1879, 1880, and 1881; that they regularly, before and since that time, have paid to the commonwealth all taxes, &c., and to the county of Orange all levies assessed against said land. And the complainants further allege that, for the entire time since their purchase in the year 1877, their tenants were authorized and directed to pay all taxes and levies upon said land; that they were not informed and knew nothing of the said land having been returned delinquent until some time in the fall of 1888, when they received a letter from their tenant, R. C. Richards, informing them that their land had been sold as delinquent land, and that R. H. Bond claimed to have purchased it for taxes due; and the complainants exhibit said letter with and as part of their bill. That in the month of November following the receipt of said letter, complainant, Smith Pettit, visited the county of Orange, and, through his attorney, James W. Morton, tendered to R. H. Bond the amount of taxes, costs, charges, and interest, who refused to receive the same; that subsequently, through their

agent and attorney, they offered to pay said R. H. Bond all taxes, costs, charges, interest, &c., which he might be entitled to receive and demand, and he, the said Bond, still refused to receive it. That when said Bond brought an alleged report and survey of said tract of land into the county court of said county, at its January term, 1889, to be approved and recorded, the complainants, through their agent and attorney, objected to said alleged survey and report, and then offered to pay into court, and to the clerk thereof, as the law requires, all taxes, interest, costs, and charges to which said Bond might be entitled; but the court being of opinion that the two years allowed for redemption had elapsed, was further of opinion that the clerk had no authority to receive said money, and refused to enter an order directing the clerk to receive the same, but, on the contrary, ordered that the said alleged survey and report be placed upon record.

The complainants further allege that, although said survey has been entered of record, no deed has been made to said Bond, and the clerk has been duly notified not to make any deed to him ; and they further allege that they are ready and willing to pay to or for said Bond all taxes, interest, levies, costs, and charges to which he may be entitled, and they offer to pay into court such sum as the court will direct to that end.

And the complainants say that they are informed, believe, and charge that, in making the sale of their land for the delinquent taxes aforesaid, the laws of the state prescribing the mode and manner for the sale of delinquent lands have not been complied with ; that the said sale was irregular and improperly made; that the said land was never duly advertised; that the treasurer of said county has never made any proper report of the sale of said land ; that no proper nor legal survey, plat, and report has been made and returned to the county court of said county ; that in all essential particulars the laws in reference to the sale of delinquent lands have not

been complied with ; and that said R. H. Bond is not entitled to have a deed to said land from the clerk of Orange county. And the complainants insist that they have, and have had ever since the sale of said land, the right to redeem the same by the payment of said taxes, interest, levies, costs, &c. ; that they have made every reasonable effort in their power, since they were informed that said land had been returned delinquent, to pay off said taxes, interest, levies, charges, &c., but have been prevented from doing so by the refusal of said Bond and the clerk of the county court of Orange to receive the same.

The complainants further set forth that they are informed that the said R. H. Bond is claiming title to said tract of land, and is demanding of Philip H. Fry, clerk of the county court of Orange county, a deed conveying said land to him. And the complainants charge that they fear the said Fry, clerk as aforesaid, notwithstanding their notice to him to the contrary, will execute and deliver to the said R. H. Bond a deed for said land, and thereby subject them to great embarrassment, damage, and injury. And the complainants further say they are informed that said Bond claims the right to enter upon said land, and to commit waste thereon by cutting and taking away valuable timber, &c. And the prayer of the bill is that said Bond and the said Fry, clerk as aforesaid, be made parties defendant to said bill, and required to answer the same, but not under oath ; that the said R. H. Bond be enjoined and restrained from demanding and receiving, and that said Philip H. Fry, clerk as aforesaid, be enjoined and restrained from making and delivering to said Bond, a deed conveying said land to him ; and that said Bond be enjoined also from going upon said land, from asserting any title thereto, and from the commission of any and all waste thereon ; that complainants be permitted to pay into court such sum of money as will be necessary to return to said Bond

the sums paid by him on account of said taxes, levies, costs, interest, &c. ; that complainants be quieted in the possession and title of and to said land, and for general relief. On the 15th day of March, 1889, the injunction was awarded according to the prayer of the bill.

The defendant, R. H. Bond, demurred to and answered the bill. The defendant, Philip H. Fry, clerk as aforesaid, did not answer, and the bill was taken for confessed as to him.

In his answer to the bill, the defendant, Bond, says it is true that complainants purchased the tract of land mentioned in said bill as set forth therein, and that said land was returned delinquent for the non-payment of taxes for the years 1879, 1880, and 1881, and that, in consequence of said non-payment of taxes, said land was sold. He denies the allegation of the bill that said tract of land was never duly advertised for sale; but, on the contrary, he avers that said land was duly and legally advertised for sale; that C. W. Woolfolk, treasurer of Orange county, had five hundred copies of the list of lands returned delinquent from 1876 to 1884 printed; that one copy of said list was duly posted at the court-house door of Orange county, and copies posted at each voting precinct in Orange county, and were also scattered broadcast over the county ; and that a copy of said list was returned to and filed in the clerk's office of Orange county court, "which will appear from a copy of said list of delinquent lands, with the endorsement of P. H. Fry, clerk, thereon, of its having been filed in the clerk's office of said county court, herewith filed as Exhibit ' A,' [in place of Exhibit ' A ' it is admitted that the land was duly advertised for sale according to law,] and prayed to be taken and considered as part of this answer."

The respondent further says that after said land was duly advertised for sale, as aforesaid, the same was duly offered for sale, at public auction, on the 23d day of August, 1886, and

that respondent became the purchaser of said tract of land at the price of $64.32, which he then and there paid to the treasurer of Orange county, and took his receipt for same ; and said receipt is filed with and as part of said answer, marked " B."

The respondent denies the allegation of the bill that, in making the sale of said tract of land for the said delinquent taxes, the laws of the state prescribing the mode and manner of sale of delinquent lands have not been complied with, and that said sale was not regularly and properly made; and respondent avers that, in making said sale, the laws were regularly and completely complied with ; that, as shown above, said sale was duly advertised, and the land was sold at public auction on the 23d of August, 1886, in accordance with said advertisement, when respondent became the purchaser thereof ; and he insists that he is entitled to have a deed from the clerk of the county, conveying said tract of land to him.

Respondent further says that neither the complainants, nor any one for them, ever offered to redeem said tract of land until the 26th day of November, 1888—more than two years after the date of the sale to him. Respondent denies the allegation of the bill that no proper nor legal report of said sale has ever been made by the treasurer of the county to the court, and avers that a proper and legal report of said sale has. been made, " as will fully appear from an extract of said report, herewith filed, marked Exhibit ' C,' and prayed to be read as part of this answer."

Respondent also denies the allegation of the bill that no proper or legal survey, plat, and report has been made and returned to the county court of Orange county ; but, on the contrary, he avers that a proper and legal survey, plat, and report. has been made and returned to said court by Fred. N. Stevens, surveyor of Orange county, which will fully appear from said survey, plat, and report, herewith filed, marked " D," and prayed to be read as part of this answer.

And respondent denies the right of complainants to redeem said land, they having allowed the two years in which they had such right to elapse, and claims that he is entitled to said land, and to have a deed conveying same to him.

There appears in the record an agreed statement of facts, signed by the counsel of the parties, respectively, as follows:

" It is agreed by all the parties to the suit of *Pettit and Dripps* v. *Bond*, that Robert Bond, the defendant, lived upon the land in question until December, 1879, at which time he left; that Lee Willis levied upon the rent corn upon the land, due to the plaintiffs, and sold same to pay taxes for 1877 and 1878; and, in December, 1879, Bond notified Mr. Nason, as agent for Pettit and Dripps, that he would leave the rent corn for year 1879 in the corn-house on the farm, and notified Nason that he would leave on a certain day. That day Nason's wagon came and took the corn, amounting, as well as Bond remembers, to about fifteen barrels, the rent paid by Bond being one fourth of the crop. Bond states that he does not know where Nason took the corn, but says Nason told him he was going to take it to his mill, about one mile from the farm, and that there was no other rent due by him (Bond), as he cultivated no other crop than corn, and he owes no other rent. It is also admitted by defendant that when he left John F. Tinder came, and remained until fall of 1880, and at that time he left, and Mrs. Blakey took possession, and was there when Robert Richards took possession in fall of 1881. It is also admitted that C. W. Woolfolk posted copies of the list of delinquent land at the different places required by law (a copy of which list is filed with the papers in the cause), and that Mr. Woolfolk states that he had five hundred copies printed, and that the taxes on said land subsequent to the time at which it was sold to Bond were paid by Pettit and Dripps."

The cause came on, and was heard on the 4th day of October, 1889, upon the bill and exhibits therewith filed, the

demurrer and answer of R. H. Bond, and the joinder of the said plaintiffs in the demurrer and general replication to the answer, and upon the bill regularly taken for confessed as to Philip H. Fry, clerk of the county court of Orange county, and upon the agreement of facts filed with the papers, and signed by John G. Williams, attorney for R. H. Bond, and James W. Morton, attorney for Pettit and Dripps, and upon all other evidence filed in the cause, and arguments of counsel, when a decree was rendered overruling the demurrer of the defendant, R. H. Bond, to the bill of complainants, and perpetuating the injunction awarded the plaintiffs on the 15th day of March, 1889, and declaring that said Pettit and Dripps, plaintiffs, be quieted in their title to the said tract of four hundred and forty-eight and one-half acres of land, and that the said land be forever released and discharged from any claim of the said R. H. Bond arising out of the alleged sale of the said land as delinquent. And the court further adjudged, ordered, and decreed that the said R. H. Bond pay to the said Pettit and Dripps their costs, &c.; and that the said Pettit and Dripps do pay to said R. H. Bond, or his attorney, John G. Williams, the sum of sixty-four dollars and thirty-two cents, that being the amount of taxes due on said land, together with the costs, with interest thereon, at the rate of 10 per centum, from the 23d day of August, 1886, until paid; and that the said Pettit and Dripps do pay the said R. H. Bond, or his said attorney, John G. Williams, the further sum of $10, the costs of making a survey of the land by County Surveyor Fred. N. Stevens.

From this decree the defendant, R. H. Bond, obtained an appeal from one of the judges of this court.

*A. R. Blakey* and *John G. Williams*, for appellant.

*J. G. Field* and *J. W. Morton*, for appellees.

Richardson, J., (after stating the case,) delivered the opinion of the court.

We are clearly of opinion that the decree is without error, and should be affirmed.

It is insisted on behalf of the appellant, Bond, that this case is, in every material particular, ruled by the case of *Flanagan* v. *Grimmet et als.*, 10 Gratt. 421; and, to sustain this contention, it is claimed that the act of February 9th, 1814, (2 Rev. Code, 542,) under which that decision was made, is substantially the same as the law, found in the 38th chapter of the Code of 1873, and subsequent acts changing and altering the same, and under which the present case must be decided.

It would be a useless expenditure of time and labor to compare the several provisions of the act of February 9th, 1814, with those of said chapter 38, Code 1873, as a mere casual glance will show that the changes are numerous and most material.

The decision in *Flanagan* v. *Grimmet* reversed the rule so long established and enforced by repeated decisions of this court; and, instead of making it incumbent upon the claimant under a sale of delinquent land to show that every prerequisite to the sale had been complied with, it made the deed itself *prima facie* evidence of such compliance, and sufficient to pass the title of the former owner, until it was successfully impeached by proof of irregularity coming from the contesting party. What was the rule, and the reason thereof, prior to *Flanagan* v. *Grimmet*, is aptly illustrated by Judge Allen, who delivered the opinion in that case. He said: "When the act of February 9th, 1814, was enacted, the legislature was fully aware of the construction which had uniformly been put on laws of this description. Few principles of law were more firmly settled, and, from their influence on

the transactions of others, more widely known, than that, where the validity of a deed depends upon an act *in pais*, the party claiming under it is bound to prove the performance of the act; that in the case of a naked power, not coupled with an interest, the law requires that every pre-requisite to the exercise of such power should precede it; that the claimant, under a sale made to enforce a forfeiture, must show that the law has been strictly complied with; that the recitals in a deed of an officer selling for taxes were not even *prima facie* evidence of the regularity of his proceedings, and that these facts must be proved by evidence *aliunde*." Citing numerous decisions of this court and of the Supreme Court of the United States.

The decision, which reversed this rule, as already suggested, turned on the construction given to certain provisions contained in said act of February 9th, 1814, and especially on the 38th section thereof. Sections 24 and 25 directed the sheriff to advertise a sale of delinquent lands at the May, June, and July terms of the court of his county, and to publish the advertisement at least once every week for two months preceding the time of sale, in some newspaper published in the city of Richmond. Section 28 directed the sheriff to execute a deed to the purchaser at such sale, reciting the circumstances thereof, and setting forth particularly and truly the amount of the purchase-money. Section 38 provided that, after the time of redemption allowed had elapsed, the regularity of the proceedings under which the purchaser at the sale claims title shall not be questioned, unless such irregularity appear on the face of the proceedings. It was held: 1st. That by the circumstances of the sale which were to be recited in the deed, was not meant all the steps to be taken by the various officers, which preceded the sale, but the circumstances attending the sale itself—viz., that the sale was made at the time and place prescribed for the sale of lands returned delinquent; if less

than the whole lot or tract was sold, how much was sold; who was the purchaser, and the amount of the purchase-money. 2d. That it was not necessary that the deed should recite that the land had been advertised. 3d. That if the deed recites that the land was advertised at the court-house door of the county for two months, but does not state that it was at the May, June, and July term of the court for the county, or in a Richmond paper, yet, as it was not necessary to recite in the deed that the land had been advertised, the recital in the deed of an insufficient advertisement is not an irregularity on the face of the proceedings which will avoid the deed. 4th. That the deed could not be questioned by parol proof of a failure to advertise the sale as the law prescribes. 5th. That if the deed is defective, it is competent evidence to show, with other evidence, an actual entry under a claim of title, and continued holding thereunder, so as to make out a title or right of entry by actual possession; and that possession so taken and continued for the time prescribed might ripen into a right of possession, and so bar the right of entry of the opposing party.

In that case the sale was made on the 15th day of August, 1815, and the deed from the sheriff to the purchaser was duly acknowledged and recorded on the 30th day of the same month. The deed recited an insufficient advertisement, and the trial court rejected it as a void deed under the statute; but this court reversed the court below, and held the deed admissible in evidence, upon the grounds above suggested; the real enquiry being as to the sufficiency of the advertisement recited in the deed. As there was in that case a deed duly executed and recorded, and as the case turned upon the effect of that deed, it is important to bear in mind that the rulings in that case must be referred to the existence and legal effect of that deed, interpreted in the light of said act of February 9th, 1814, under which said decision was made.

In the present case the appellant, Bond, who claims to have become the purchaser of the land in question at a sale of delinquent lands regularly made by the treasurer of Orange county, on the 23d day of August, 1886, and to be entitled to a conveyance of same from said treasurer, has received no deed; and the question is whether, under the circumstances, he is entitled to demand and receive from said treasurer a deed to said land.

It sufficiently appears by the record that the 448½-acre tract of land involved in this controversy was returned delinquent for the non-payment of taxes for the years 1879, 1880, and 1881, and that the same was duly advertised for sale on the 23d day of August, 1886; but there is no sufficient evidence that the same was regularly sold on that day for the taxes due and unpaid for said years, or that there was ever any legal and proper report of any such sale.

By section 2, ch. 548, Acts 1883–'4, it is provided that, "On or before the first day of July, eighteen hundred and eighty-five, the auditor of public accounts shall cause to be delivered to the treasurer of each county or municipal corporation in the commonwealth a list of the real estate therein which, since the 1st day of April, eighteen hundred and sixty-five, shall have been returned delinquent for the non-payment of state taxes and county levies for all purposes thereon, and on which state and county taxes remain unpaid, with a statement showing, in different columns, in such form as may be prescribed by the said auditor, the amount due for such taxes on each tract or lot so returned delinquent for each year, and for interest on such taxes," &c.

The 6th section of the same act provides the mode of making sale of delinquent lands by the treasurer.

The 9th section provides that "the treasurer, on receiving from any purchaser the amount of purchase-money, shall grant to him a receipt for the same, in such form as may be pre-

scribed by the auditor, showing date of sale, name of person charged with taxes for which the land was returned delinquent, quantity of land charged with taxes, local description of land, amount of state taxes due, with interest and commissions, quantity of land sold, and description of same, name of purchaser, and amount of purchase-money; and the auditor shall furnish the several treasurers blank forms of such receipts." This provision was obviously intended for the protection of the purchaser.

Section 10 prescribes the fee to be paid by the purchaser to the treasurer for a receipt made out according to said prescribed form.

Sections 11 and 12 prescribe with minute particularity a form for the treasurer's report of sales, and the oath to be subjoined thereto; by which he is required to make a statement showing, in different columns, the amount due for such taxes on each tract or lot returned delinquent for each year. These specific provisions were manifestly intended as a convenient form of notification to the land-owner as to the year or years for which his land was returned delinquent and sold for taxes; so that he might, within the time allowed for redemption, examine his tax-bills and receipts, and ascertain whether or not such taxes were properly chargeable upon his land, whether his land had been properly or improperly returned delinquent, and that he might have an opportunity of defending himself against any unjust or erroneous assessment or return, or to pay the taxes, if justly due, and redeem his land. Without such notice and opportunity of protecting his rights any land-owner would be liable to become the victim of injustice and oppression, and to forfeit his estate for a mere song. Hence, section 15, ch. 38, Code 1873, as amended by the act approved April 4th, 1877, Acts 1876–'7, p. 352, provides that the list of sales or report required by the statute, with the certificate of the required oath attached thereto, shall

be returned to the court of such county (whose officer may have made the sale), at the first or second term next after the completion of said sales, &c. By this provision the purchaser is protected as to any rightful claim acquired by him at the sale, and the owner, in whose name the land was returned delinquent and sold, is afforded an opportunity of gaining correct information, and of taking the steps necessary to the protection of his rights.

There was, in contemplation of law, no report of the sale—if any there was—in the present case. It is true there appears in the record what purports to be a report of the list of sales of delinquent lands made on said 23d day of August, 1886 ; but, so far from having been made, as expressly required by the statute, at the first or second term next after the completion of the alleged sale, it was, as appears on its face, not sworn to until the 22d day of August, 1887, just one year after the alleged day of sale. The pretended report is fatally defective in other respects. It shows, it is true, that the appellees, Pettit and Dripps, were charged with the delinquent taxes ; that the quantity of land was 448½ acres; that the amount of taxes and penalty was $33.93, the amount of levies and penalty $20.38, making amount of purchase-money $54.31; at which sum the appellant, Bond, became the purchaser at a sale made on the 23d of August, 1886. But it entirely omits the residence of the owners, the estate held, the local description of the land, the distance and bearing from the court-house, and the amount of county levy ; and, so far from showing that the land was sold as delinquent for the non-payment of taxes for the years 1879, 1880, and 1881, the report shows on its face that it was " sold for non-payment of taxes and levies for the years 1876 to 1883, inclusive."

There is also a singular discrepancy between the amount of purchase-money set forth in said pretended report and that specified in the treasurer's receipt to the appellant, Bond. In

the former it is stated at $54.31, while in the latter it is stated at $64.32. A suspicious circumstance connected with this receipt is that it shows a redemption by Bond, rather than a purchase of the land. It is as follows:

" $64.32-100.—Received of R. H. Bond (land bought at auction) sixty-four dollars thirty-four cents on account of the redemption of 448½ acres of land returned delinquent for the non-payment of taxes and county levies. by the treasurer of Orange county for the years from 1876 to 1883, inclusive, (land in name of Smith Pettit and Jas. Dripps,) 448½ acres, as follows: ·

| | | | | |
|---|---|---|---|---|
| State tax, | - | - | - | $51 73 |
| County levies for all purposes, | | - | | .......... |
| Commissions, | - | - | - | ......... |
| Expenses of sale, | | - | .- | 12 59 |
| | | | | $64 32 " |

There is another circumstance strongly tending to induce the conclusion that Bond's original purpose was to redeem the land for the owners. It is a fact agreed that Bond occupied the land in question, as the tenant of the appellees, for the year 1879, the first of the three years for which it was returned delinquent, and had in his possession rent corn more than sufficient to pay the taxes for that year; but, instead of doing so, turned it over to a Mr. Nason, as agent for Pettit and Dripps, the owners of the land. In fact, it is alleged by the appellees in their bill, and not denied in the answer, that, for the entire time since the purchase by them of the land in question, in the year 1877, their tenants were authorized and directed to pay all taxes and levies upon said land. And it is also a fact agreed that for the whole time since their pur-

chase, except for the years 1879, 1880, and 1881, the appellees have regularly paid the taxes on this land.  Having thus paid the taxes for all the years prior and subsequent to the three years for which the land was returned delinquent, the appellees, who directed their tenants (who seemed to have had ample means for the purpose) to pay the taxes, may well say, as they do in their bill, that, " without their knowledge, and by reason of some oversight which they cannot explain, said tract of land was returned delinquent for non-payment of taxes for the years 1879, 1880, and 1881."

Now, can it be said that the pretended report of sale, above considered, which is in neither form nor substance a report such as is required by the statute, which was made, not at the first or second term next after the alleged day of sale, and which was unauthorized by law, can be considered valid, or as constituting any just ground upon which to base a reasonable claim to the land in controversy ?  We think not.  Can it be said that, under and by virtue of proceedings so vague, indefinite, and self-contradictory, and so palpably opposed to both the letter and spirit of the law in respect to the sale of delinquent lands, the forfeiture of the land of the appellees should be enforced for the paltry consideration of $64.32 ?  Surely not.  For the pitiful sum named the appellant is here claiming 448½ acres of land.  To enforce such a claim, under the circumstances which characterize this case, would be to go counter to every known principle of equity and right.

In *Wilson* v. *Bell*, 7 Leigh 22, which grew out of a sale of delinquent land, Judge Carr observed that sales and purchases founded on forfeitures deserve no indulgence from the court ; and in the same case Judge Tucker said : " These laws of forfeiture should be strictly construed, and there should be no leaning in favor of a transaction by which a tract of thirty acres of land is sacrificed to a purchaser for forty-eight cents."

The report of sale exhibited by the defendant, Bond, the

appellant here, with his answer, is fatally defective on its face, and must be treated as unauthorized and invalid for any purpose. This could well have been held under the ruling in *Flanagan* v. *Grimmet, supra,* decided under the act of February 9th, 1814, for, in discussing the effect of that act, Judge Allen said : "I think the deed was improperly excluded from the jury upon the ground of any objection appearing on the face thereof. The deed, if proved to have been executed by a duly-qualified sheriff, should have been permitted to go to the jury as *prima facie* evidence of such title as, according to the 37th section of the act of February 9th, 1814, it purported to vest in the purchaser at such sale, liable to be questioned, according to the 38th section of said act, for any irregularity appearing *on the face of the proceedings.*" For these reasons we are of opinion that the decree appealed from is clearly right, and the same must be affirmed.

DECREE AFFIRMED.