# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

LAURA ATTKISSON, ET ALS. V. LUCY MOORE.

January 12, 1933.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Reuben J. Martin* and *Robert B. Gayle,* for the appellants.

*George B. White,* for the appellee.

BROWNING, J., delivered the opinion of the court.

Lucy Moore instituted a suit in equity to remove a cloud upon her title to five acres of land lying in Henrico county, claimed to be owned by her. The alleged cloud arose by reason of a tax deed, executed by the clerk of the circuit court of that county, which conveyed the land to Laura Attkisson, who was the assignee 'of John B. Gayle, trading as the Tax Title Company of Richmond, he, Gayle, joining in the execution thereof.

We deem it well to recite the facts in some detail which will show a history of the transaction. Thomas Manuel, a colored man, of Henrico county died in 1917, seized and

possessed of a tract of 180 acres of land, a part of which was devised to his eight children, of whom Lucy Manuel was one, who later intermarried with one Moore. The land in question was allotted to her and was assessed for taxation in her maiden name and all taxes thereon were paid by her up to the year 1922. Prior to this time, the exact date the record does not disclose, she was married. She had theretofore gone to Brooklyn, N. Y., to reside. Late in the year 1921 or early in 1922 she attempted to have the land changed for taxation from her name as Lucy Manuel to that of Lucy Moore to accord with the fact of her changed status. On this subject there appears in the record the following letter from the then treasurer of the county to her under date January 11, 1922, and caption L. H. Kemp, Jr., treasurer of Henrico county, Twenty-second and Main streets, Richmond:

"MRS. LUCY MOORE,
    "Brooklyn, N. Y.
"DEAR MADAM:
    "Your letter of recent date received. $1.00 is all that is necessary to transfer your property, but in your letter to Mr. Frayser several days ago you did not enclose any money. This letter was opened by him in my office and he remarked at the time that your letter read like you had enclosed the money, but no money was in the envelope.

"Yours very truly

"L. H. KEMP."

On the 7th day of January, 1924, the land was sold at auction by the treasurer of the county for the taxes thereon for the year 1922 which had been returned delinquent in the name of Lucy Moore. The deed already referred to was executed on May 4, 1928, and duly recorded. The land which had on it a two story dwelling was assessed at $490.00. It is alleged by counsel for appellee that no notation of the sale of the land for taxes was made by the commissioner on his books to indicate its status as required by section

2283 of the Code of 1924 but the evidence is silent as to this unless it is justified by the testimony of T. J. Todd, the county treasurer, that he could find no record in his office with reference to either the advertisement of the land or notification to Lucy Moore. It continued to be assessed in the name of Lucy Moore for the years from 1923 to 1928, inclusive, and she paid the taxes for each of these years. She incidentally learned in the summer of 1928 after the execution and recordation of the deed that her land had been sold. She then brought her suit, already referred to, alleging substantially the facts as are here detailed and charging that the provisions of the applicable statutes as to notice had not been complied with and that she had been prevented from redeeming the land by fraud and concealment upon the part of the purchaser and his assignee, appellants here. The appellants, who were the defendants in the court below, filed their separate answers denying the allegations of the bill, particularly that of fraud, and John B. Gayle, the purchaser, affirmed that he had been informed that Lucy Moore was not a resident of Virginia and that she was notified by an order of publication under the statute of Virginia in such cases made and provided.

The land is situated about seven miles from the home of the appellant, Laura Attkisson. During the residence of Lucy Moore in the State of New York and at the time of the sale and the procurement of the deed it was in charge of her brother, Moses Manuel, whose land adjoins it. He did not know of the sale until the year 1927, when an insurance agent was sent upon the property, by the husband of the appellant, Laura Attkisson, for the purpose of insuring the buildings. Moses Manuel was well known to Laura Attkisson's husband for he had been in his employ, we may fairly infer from the testimony, before the tax sale. Two other brothers of Lucy Moore lived in close proximity to the land on their portions of the same inheritance. The family was well known to the county officials of Henrico county and Lucy Moore's New York address was known to the two

treasurers whose respective terms of office covered the period of time here involved. Their deputies were also aware of it. In 1922, the year for which the land was returned delinquent, and also the year in which Lucy Moore attempted to have the assessment changed from her maiden name to her married name, the office of treasurer was changed from the custody of T. J. Todd, deputy treasurer, in charge, to L. H. Kemp, Jr., who took it over and who discontinued the method of his predecessors in mailing notices to out of town persons of the amount of their taxes and the fact that they were due and payable. T. J. Todd, who subsequently became treasurer, succeeding Kemp, testified that he thought this accounted for the failure of Lucy Moore to get her notice of the taxes for 1922, *ex consuetudine*. Lucy Moore testified that she paid the taxes for the year 1922 and in moving from one location to another in Brooklyn she supposed she mislaid her papers. This is not unlikely for the very next year, 1923, she sent a money order to the treasurer, L. H. Kemp, Jr., for $10.00, which was $1.67 more than her tax bill for that year, according to the treasurer's letter to her in which he returned the excess, and she had no receipted bill for this payment.

The appellee, who was the plaintiff in the court below, elicited testimony from witnesses tending to prove substantially the facts as here stated. The defendants below, appellants here, offered no evidence. The court decreed that the plaintiff was entitled to the relief prayed for and accordingly ordered the offending deed vacated, annulled and removed, as constituting a cloud upon her title.

It is notable that neither the deed nor a copy thereof is in the record nor does the order of publication or publication relied upon by the appellants appear in the record. If the deed were before us it would be only *prima facie* evidence of the proper performance or existence of the statutory requirements necessary to its validity, but because of its omission we are in the dark as to its recitals or anything else relating to it as a valid muniment of title.

The facts, substantially proven by the plaintiff, as we have related them, are quite sufficient, we think, to shift the burden occasioned by the presumption and make it incumbent upon the defendant to put his deed in evidence and show by proof that the controverted statutory provisions necessary to its validity had been complied with. This he has not done.

In *Black on Tax Titles,* section 249, page 326, it is said: "And even where the tax deed is made *prima facie* evidence by statute, still, when such evidence has been introduced as will overcome its presumptive force, the claimant must then resort to the records for proof."

██ In the acquisition of title to land on account of the non-payment of taxes, by purchase at a public sale, held by the county treasurer, under the provisions of section 2460 of the Code of Virginia of 1924, the statute in such case made and provided, the treasurer, after receiving the delinquent list from the clerk of the circuit court of the county in which the land lies, is required, in order "to secure general publicity of the time and place of sale of the lands therein mentioned as delinquent," to post a copy of such list at the front door of the court house of his county on the first day of a circuit court and to post printed copies in at least five public places in each magisterial district in the county, or the Auditor of Public Accounts, in lieu of such posting of the *printed copies,* may direct a copy of said list to be inserted once in a newspaper published in the county or city. The expense of this printing shall be apportioned among the delinquents according to the amount of taxes and levies due by them. To each copy thus posted and published the treasurer shall attach a notice of sale of the lands to satisfy the taxes, etc. Of course the purpose of this provision is manifest. It is mandatory and must be strictly observed else the sale is invalid and there is a missing link in the chain of title of a subsequent purchaser of the land at such sale.

The appellants, defendants in the court below, contend that the method of publication of the list once in a newspaper by direction of the Auditor, was adopted in the present case. It will be noted that the newspaper publication is only in lieu of the posting of printed copies but does not dispense with the requirement to post a copy of the list at the front door of the court house. The only effort of the appellants, defendants below, to present any evidence at all was upon the cross-examination of the plaintiff's witness, T. J. Todd, who was treasurer of Henrico county, when they introduced as an exhibit a letter from Mr. E. R. Combs, Comptroller, to John B. Gayle, attorney at law, and one of appellants, dated October 22, 1929, of which the germane part is as follows: "Real estate for the above year that was returned delinquent and advertised in a newspaper published in the city of Richmond by the treasurer of Henrico county for delinquent taxes for the year 1922, the bill for advertising the list was paid by the Auditor of Public Accounts on the 20th day of December, 1923." Valid objection was made to the admissibility of this letter as evidence but it appears not to have been insisted upon at the trial as there was no ruling of the court upon the point. It is submitted however that it is wholly insufficient to prove that the requirements of the statute as to notice were complied with. The treasurer's report of the sale of the land in question fails to show that any portion of the expense of printing was apportioned to it which is another mandatory provision of the statute.

As has been pointed out above, the defendant, John B. Gayle, by his answer admitted that he had been informed that the plaintiff was not a resident of the State of Virginia, and declared that she had been notified of his application for a deed *by an order of publication under the statute of Virginia in such cases made and provided.* As a basis for such order of publication he filed with the clerk the following affidavit:

"Richmond, Va. April 10, 1924. I, John B. Gayle, do hereby affirm that due diligence has been used on behalf of the purchaser to ascertain in what county or corporation the within named Lucy Moore is, without effect. (Signed) John B. Gayle."

Then appeared the *jurat*.

Section 2495 of the Code of 1924, which is the applicable statute where the land has been bought in by the Commonwealth and subsequently application is made for its purchase, provides for this character of affidavit upon which an order of publication may be entered by the clerk. This was the state of the case when it was heard and determined by the trial court.

The learned judge delivered a written opinion in which he said in part, after quoting the above affidavit: "It will be seen that the applicant elected to proceed under that part of section 2495 which relates to diligence on behalf of the applicant and not upon affidavit that the delinquent was a non-resident of the State.

"The description of the property is set out in detail as shown by a survey, reference to which is made in the deed. There were improvements on the property which was located on a county road.

"The sisters and brothers of the plaintiff resided on portions of the original tract and one brother, Moses Manuel who had charge of the property in this cause, lived on a tract of land adjoining it. The evidence fails to disclose that inquiry was made by the applicant in the office of the treasurer or to the sheriff, deputy sheriff or any other officers, all of whom were acquainted with the land in question, the delinquent and her sisters and brothers, or that the applicant exercised any diligence whatsoever to ascertain the whereabouts of the petitioner.

"The deputy clerk testified that no order of publication was authorized by the clerk or the court, nor was a notice posted by the clerk at the front door of the court house.

"In order for an applicant to procure a valid deed under the delinquent land laws, he is charged with the duty of complying strictly with the statutes before the owner of the property can be divested of title, and the evidence in this case shows conclusively that there was an absence of due diligence as required by the law, and further the court is forced to the conclusion that had diligence been exercised in this case that the residence of the complainant could have been ascertained and the taxes that were delinquent, upon notice to her, would have been promptly paid. The court, therefore, is of opinion that the prayer of the bill should be granted and the deed set aside and annulled and a decree will be entered to that effect upon its presentation."

█ Counsel for appellants contend before this court that the judge of the trial court misconceived their defense and acted upon the erroneous theory that the land was sold under section 2495, when in fact the sale and procurement of the deed were under sections 2460, 2482, 6041 and 6043. The latter are in truth the applicable statutes to the precise case but there is an absence of proof that their provisions were carried out. The opinion of the court was in accord with the issues as made before it and it at once seized upon the inherent fault of this case. Despite the affidavit the evidence shows that had due diligence been employed by the purchaser, appellant, to ascertain the whereabouts or residence of Lucy Moore it could and would have been effective and she would have promptly paid any taxes that were delinquent.

█ In *Black on Tax Titles*, section 254, page 333, it is said: "It is now no longer necessary for the tax purchaser to open with a detailed proof of all the facts which led to his title. He has only to put in his deed and await an attack upon it. And the original owner, or other person contesting the tax title, must lay his finger upon the precise point or points where he claims the proceedings to have been irregular or unauthorized, and must establish, by sufficient and satisfactory legal evidence, the illegality or fault which

vitiates them. If he shall succeed in thus making out a *prima facie* case against the tax title, he will have shifted the burden of proof, in respect to the points so singled out for attack, back to the purchaser. The exact *quantum* of proof necessary to accomplish this—to shift the burden of proof of regularity back to the owner of the tax title—has not been fixed by the authorities. But it is said: 'The evidence sufficient to change the burden of proof must be such as to exclude any reasonable presumption of regularity; in other words, that the evidence of irregularity must be such as to require explanation or counter-proof, and must be of matters which are peremptory and not directory, and that it is not sufficient to cast a general doubt over the title, but that it is necessary to point out some specific defect, or raise a reasonable presumption against the sufficiency of some particular act, or of the non-performance of some necessary duty.' "

In the case of *Mathews* v. *Glenn*, 9 Va. Law Reg., page 553, from the Chancery Court of Richmond, the learned Judge Grinnan said: "Assuming that the affidavit of 'diligence' is in legal form, the question arises, was diligence actually used on behalf of Glenn to ascertain in what county or corporation Mrs. Mathews resided? I take it that a proper construction of the statute, which authorizes the order of publication against the landowner and which requires the affidavit mentioned as the basis of this publication, contemplates necessarily that actual diligence measuring up to the legal standard must have been used and that a failure to attain to this standard of diligence will invalidate the applicant's proceedings, inclusive of the clerk's deed. It could never have been intended that a tax applicant can claim the benefit of the affidavit, where the facts behind it will fail to justify it, and can vouch as a sufficient authority for his action the bare letter of the law, the spirit and intent of which has been violated. It would be impracticable to lay down a fixed rule, as to what amount of diligence must be used, that would be applicable to all cases;

each case must be tested by the peculiar circumstances of that case. It cannot be intended that the greatest diligence that ingenuity can suggest must be used, for the statute uses the simple word 'diligence.' I think that the tax applicant should use such a degree of diligence as diligent persons of ordinary intelligence would ordinarily exercise under like circumstances when prompted by a sincere and earnest desire to ascertain in what county or corporation the landowner resides. There must be an active, faithful, and reasonably intelligent search for the information. The evidence in the record shows plainly to my mind that the facts upon which Glenn's affidavit are based fall below this standard. It appears to me that no reasonable degree of diligence was used to obtain the proper information, for it is apparent that Mrs. Mathews' place of residence in this city could have been readily found by the most ordinary methods of inquiry."

In the case cited a petition for an appeal was presented to this court and was denied. It is true that the case involves a tax title which was based upon a deed made to lands which had been sold to the Commonwealth and acquired by the tax claimant from it, but what was there said with reference to the affidavit and the *bona fides* of the claimant with respect to the degree of diligence required is pertinent here.

See also *Virginia Building & Loan Company* v. *Glenn*, 99 Va. 460, 466, 39 S. E. 136; *Gordon* v. *Joyner*, 112 Va. 347, 71 S. E. 652, 653, where it is said: "No rule of law is more firmly settled than that in the case of a naked power, every prerequisite to its exercise must precede it."

It follows that the decree of the trial court, to which all matters of law and fact were submitted, is affirmed.

*Affirmed.*