# Wytheville

CITY OF RICHMOND, A MUNICIPAL CORPORATION V.
MONUMENT AVENUE DEVELOPMENT CORPORATION.

June 6, 1945.

Record No. 2925.

Present, All the Justices.

The opinion states the case.

*Horace H. Edwards*, for the plaintiff in error.

*Peyton, Beverley, Scott & Randolph*, for the defendant in error.

Spratley, J., delivered the opinion of the court.

This action was brought by the city of Richmond, Virginia, a municipal corporation, to recover of the Monument Avenue Development Corporation, hereinafter referred to as the corporation, a personal judgment for taxes on a certain lot of land assessed in the name of the corporation for the years 1934 to 1942, both inclusive. The first half of the tax for 1934 was paid when due but the last half of the 1934 tax and the taxes for the subsequent years remained unpaid. On September 9, 1935, in accordance with provisions of the charter of the city of Richmond, and pursuant

to due advertisement, the land was offered for sale at public auction by the city collector of delinquent taxes for the delinquent half of the 1934 tax, with penalties and interest. At this sale the land was struck off to or purchased by the city. No certificate of the sale to the city has ever been recorded by the city comptroller in the office of the clerk of the Chancery Court for the city of Richmond. The land was continued on the land books in the name of the corporation as owner and assessed for taxation for the years 1935 to 1942, inclusive.

The action was instituted December 4, 1943, by a warrant returnable before the Civil Justice court of said city. Upon judgment being entered in favor of the city, the corporation appealed to the Law and Equity Court of the City of Richmond, Part Two. Neither party demanding a jury, the cause was thereupon heard by the judge of said court, and judgment was entered for the defendant corporation. From that judgment the city obtained this writ of error.

The question for our determination is whether or not after the sale of the real estate for delinquent taxes, on September 9, 1935, to the city, the corporation is personally liable for the taxes assessed against the property in the name of the corporation subsequent to that sale.

The corporation contends that the city became immediately vested with title to the land on the day of the sale, and that the corporation, being thereby divested of title, the city could not thereafter properly assess taxes on the land against it. The city contends that the recordation by the city comptroller of a certificate of sale is a condition precedent to the vesting of the title in it, and no such certificate having been issued or recorded, the corporation remained the owner of the land and liable to the annual assessment of taxes upon it, as if the auction sale for the delinquent 1934 taxes had never been held.

The city concedes in its brief that if the corporation is correct the city cannot recover the taxes. The corporation concedes in its brief that if it, the corporation, was still the

owner of the property after the sale on September 9, 1935, the city can recover.

The Constitution of Virginia requires that all property, except as therein provided, shall be taxed (section 168); that all assessments of real estate shall be at its fair market value, to be ascertained as prescribed by law (section 169); and that real estate shall be subject to local taxation only (section 171). Property owned directly or indirectly by political subdivisions of the Commonwealth is exempted from taxation (section 183).

Section 241 of the Tax Code provides for the assessment of real estate for local taxation. Section 251 of the Tax Code requires the annual taxation of all real estate, except such as is exempted by law, and both this section and Code section 2454 provide that there shall be a lien on the same for the payment of taxes and levies assessed thereon, prior to any other lien or encumbrance.

Under sections 298 (formerly Code 1919, section 3075) and 378 (formerly Code 1919, section 2439, as amended by Acts 1926, p. 1006 and Acts 1934, p. 356) of the Tax Code such taxes may be collected by distress upon the goods and chattels of the land owner, and under Tax Code section 403 (Acts 1918, p. 561, as amended by Acts of 1938, p. 157) collection may be enforced "by warrant, motion, action of debt or assumpsit, bill in chancery or by attachment". *Pollard* v. *Richmond* (1943), 181 Va. 181, 24 S. E. (2d) 564.

It is unquestioned, that the foregoing constitutional and statutory provisions require that taxes shall be assessed against the owner of the land, and that a lawful assessment of taxes upon real property imposes a personal liability upon the owner against whom the taxes are assessed.

Sections 67, 68, and 69 of the charter of the city of Richmond (Acts 1926, chapter 318, pp. 533, *et seq.*), substantially similar to state statutes (Virginia Code section 2454, *et seq.*) relating to the same subject, give the city a lien on all real estate and on each and every interest therein for city taxes assessed thereon, and provide for the sale of such real

estate for delinquent taxes by the city collector of delinquent taxes at public auction to the highest bidder, pursuant to due advertisement.

Section 70 of the city charter provides that: "If at any such sale no bid shall be made for any such parcel of land, or such bid shall not be equal to the tax or assessment, with interest and charges, then the same shall be struck off to the city. As soon after the completion of such sales as practicable, the collector of delinquent taxes shall make out a list of all sales made to the city, in which the property purchased shall be described, and the aggregate amount of tax or assessment with charges and expenses specified, and shall deposit the same with the Comptroller of the city".

Section 71 of the charter provides that: "The owner of any real estate so sold, * * * may redeem the same by payment to the purchaser, his heirs or assigns, within two years from the sale thereof, the amount for which the same was sold, and such additional taxes thereon as may have been paid by the purchaser, * * * or, if purchased by the city, with such additional sums as would have accrued for taxes thereon, if the same had not been purchased for the city, * * * ".

Section 72 is a saving to persons under disabilities.

Section 73 relates to the obtaining of a deed by a purchaser, other than the city, and the recitals to be contained in such deed.

Section 74 provides that when the purchaser, other than the city, shall have obtained a deed and within sixty days from the date of such deed shall have caused the same to be recorded, "a fee simple estate shall stand vested in the grantee in such deed at the commencement of the year for which the said taxes were assessed, subject to be defeated only by proof that the taxes for which said real estate was sold were not chargeable thereon, or that the taxes properly chargeable on such real estate have been paid; * * * ".

Section 75 reads as follows: "In case that any real estate struck off to the city, as hereinbefore provided, shall not be

redeemed within the time specified, the Comptroller shall, within sixty days after the expiration of two years from the sale, cause to be recorded in the clerk's office of the chancery court, * * * , a certificate of sale with his oath that the same has not been redeemed, and thereupon the said corporation, or its assignee, shall acquire an absolute title in fee to such real estate, and every interest therein, * * * , subject to be defeated only by proof that the taxes for which said real estate was sold were not properly chargeable thereon, or that the taxes properly chargeable thereon had been paid at the time of the execution of such certificate. The said certificate shall be recorded in the said clerk's office in a record book known as 'deed book, recording conveyances to city of lands sold for delinquent taxes', * * * . * * * . The said certificate, or the record thereof, or a certified copy thereof, shall, in all courts and other places, be evidence of the facts therein stated; provided, however, that the failure to obtain or record such certificate shall not invalidate the lien of the city for all taxes assessed against such real estate, but the city may, at any time, elect to enforce its lien for taxes in a court of equity and release its right as a purchaser, or to become a purchaser of such real estate".

The steps required, in the event of a sale to the city, may be summarized as follows:

(1) The delinquent taxes must have been properly assessed and unpaid on day of sale;

(2) Notice and advertisement by the collector of delinquent taxes of the sale and a listing of the delinquent property by the collector;

(3) The failure of the sale to produce a bid equal to the taxes chargeable against the property, in which event the same shall be "struck off" to the city:

(4) Report by the collector of delinquent taxes to the city comptroller of the property sold and certain details relating thereto: and,

(5) Recordation in the clerk's office of the Chancery Court by the comptroller "within sixty days after the ex-

piration of two years from the sale", if the taxes and penalties in the meantime have not been paid, of "a certificate of sale"; and "thereupon the said corporation, or its assignee shall acquire an absolute title in fee to such real estate * * * ".

It is well settled in Virginia that each and every step which the law requires a person, the State or a political subdivision of the State, to take, in order to acquire a title to land sold at a tax sale, must be strictly complied with, else the tax sale is invalid, and there is a missing link in the title of a subsequent purchaser. *Boon* v. *Simmons*, 88 Va. 259, 13 S. E. 439; *Coles* v. *Jamerson*, 112 Va. 311, 71 S. E. 618; *Zimmerman Co.* v. *Dey*, 121 Va. 709, 93 S. E. 597; *Dennis* v. *Robertson*, 123 Va. 456, 96 S. E. 802; *Attkisson* v. *Moore*, 159 Va. 643, 167 S. E. 367; Minor on The Law of Tax Titles in Virginia, pp. 81, *et seq.*

The defendant corporation contends that what this court "has said of the *effect* of a sale for delinquent taxes under the statutes must be equally true of the *effect* of a sale for delinquent taxes under the provision of the city's charter", inasmuch as the provisions of the charter are substantially similar to the statutes. This brings us to a discussion of the cases and the general principles applicable.

In *Boon* v. *Simmons, supra,* it was held that the purchaser at a tax sale did not acquire title because the court to whom the treasurer reported the tax sale did not continue the matter for thirty days, as then required by statute. Neither did it confirm the report made to it. The statute (Acts 1885-86, chapter 261, p. 282), provided that the court "shall continue" the matter and if, in the meantime, no objections were filed "shall confirm" the sale. The continuance and the confirmation were held to be mandatory steps and the failure to comply with them fatal to passage of title to the purchaser.

We said: " 'The power to sell land for non-payment of taxes is not a common law power, but arises entirely from statute, and therefore exists only when the conditions pre-

scribed by the statute are fulfilled; and since the statutes are penal, and the proceedings under them *ex-parte*, summary, executive rather than judicial, and an infringement of the rights of property only tolerated by reason of necessity, great strictness and exactness in following the law is required in favor of the landowner. All acts prescribed by the statute must be performed in the place, manner, form, and time therein named; every provision in which the owner can possibly have an interest must be strictly obeyed, or the resulting tax title will be void'. (Blackwell on Tax Titles, section 121.) In section 126, the same writer says: 'The proceedings are adverse, *ex-parte*, and statutory, and have nothing to stand upon but the statute, from which if they vary, they can lay no claim to its support, and are therefore wholly without support. * * * ' "

In *Coles* v. *Jamerson, supra,* it was held that a tax deed from the clerk of the court to the assignee of a purchaser at a tax sale was invalid because the deed did not comply with the requirement of Code, 1904 (Pollard), section 655, that there "shall be set forth" in the deed the treasurer's report of sale and the order of the court "confirming" same.

In *Attkisson* v. *Moore, supra,* the record did not contain a copy of the tax deed nor disclose a due publication of the delinquent land list required under Code, 1930, section 2460. Mr. Justice Browning, referring to the lack of proof of publication and notice, said the requirement of the statute "is mandatory and must be strictly observed else the sale is invalid".

In *Zimmerman Co.* v. *Dey, supra,* we quoted from the opinion of the corporation court as follows: " 'Upon reading the earlier decisions of our Court of Appeals in tax title cases, one clearly sees that it has been a uniform policy to require a strict compliance with the statute in order to divest a landowner of his rights in his land. This is because such statutes are penal in their nature and entail forfeitures. *Wilsons* v. *Bell,* 7 Leigh (34 Va.) 22; *Boon* v. *Simmons,* 88 Va.

259 (13 S. E. 439); *Bond* v. *Pettit*, 89 Va. 474 (16 S. E. 666).' "

In *Thatcher* v. *Powell*, 6 Wheat. (19 U. S.) 119, 125, 5 L. Ed. 221, this was said by Chief Justice Marshall: "That no individual or public officer can sell, and convey a good title to the land of another, unless authorized so to do by express law, is one of those self-evident propositions to which the mind assents, without hesitation; and that the person invested with such a power, must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this court."

In his admirable work on tax titles in Virginia, Prof. Raleigh C. Minor, in discussing the time at which title becomes vested in the State says at page 81:

"The commonwealth is as much a purchaser at the tax sale as an individual purchaser, and it would seem to have just the same kind of title that a purchaser would have who has obtained no deed. Hence, up to the time the tax title vests in the commonwealth, it would seem that any material omission and defects in the performance of any of the steps required by law would be fatal to the commonwealth's title".

Referring to omission or defects in steps to be taken before a valid title has been obtained, he says on page 83:

"And the fact that the commonwealth is a purchaser will make no difference in the principle. The title acquired at such tax sale is inherently vicious, whoever may be the purchaser. The omission constitutes an incurable defect, which will pass with the title and invalidate it into whosesoever hands it comes".

And on page 85 he further says:

"It becomes therefore of great interest to determine at what time the title under a tax sale finally vests in the state; for until that time the property is still the owner's, and he cannot be deprived thereof without process of law * * * ".

" * * * A more probable construction of the statute is that although the Commonwealth's title to land sold at a tax sale is not finally determined until the list containing it is

recorded in the auditor's office (now returned to the circuit court or corporation court for confirmation; Code, 1942, sec. 2489), yet, *when so recorded*, the title relates back to the sale". (Italics supplied.)

To overcome the effect of the foregoing principles which have been repeatedly recognized by this court, the defendant corporation relies upon certain statements in *Dennis* v. *Robertson, supra*, and *Zimmerman Co.* v. *Dey, supra*, and upon certain language in the redemption provisions of section 71 of the city charter and sections 2491, 2495, 2497, and 2503 of the Virginia Code.

The two cases next above cited involve the validity of conveyances from the Commonwealth after tax titles were acquired by it through the performance of all of the statutory prerequisites, including confirmation by judicial order. Whatever was said therefore referred to a title which had been made complete, so far as those requisites were concerned. The time at which the title became vested in the Commonwealth was not in issue. The language employed in *Zimmerman Co.* v. *Dey, supra*, must be read and considered in view of the issues therein involved.

The two cases differ from the present case in that in this case all of the necessary steps to the vesting of title in the city were not taken, as hereinbefore pointed out. Further, it must be assumed that the court was familiar with the statement in *Boon* v. *Simmons, supra*, page 264, that: "It is well established by the decisions of this court that, wherever it is necessary for a court to confirm a sale, there is no sale until the order of confirmation is made. 'Judicial confirmation of the sale when required by law, is essential to a valid title, but no confirmation can aid a void title'. 2 Blackwell on Tax Titles, section 674; 2 Minor, page 322".

■ In section 71 of the city charter, referring to what the city may require a landowner to pay in order to redeem his property after a sale to the city, are the following words: "Such additional sums as would have accrued for taxes thereon if the same had not been purchased by the city". This

clause follows substantially the language of Code, section 2491, in relation to redemption of land sold to the Commonwealth. It must be considered in connection with the purpose of the entire section and in connection with other pertinent sections relating to delinquent land sales.

The purpose of sections 71 and 2491 is to afford a right of redemption to the owner of the land, and in the event of redemption, to preserve to the city or the Commonwealth, as a purchaser of the land, a lien for taxes following the sale. Such additional taxes as may have been paid by an individual purchaser after the sale are included in the amount of redemption. This, however, does not relieve the land from taxes not paid by either an individual purchaser or by a redeeming owner. Not a word is said of the cancellation of taxes properly assessed, taxes which section 168 of the Constitution of Virginia and section 241 of the Tax Code require to be imposed upon real estate, and for the payment of which Code, section 2454, and Tax Code, section 251, impose a lien on such real estate, and Tax Code, sections 298, 378, and 403, impose a personal liability on its owner. Unpaid taxes accrue against land, and against its owner until he is divested of ownership, whether or not the land be sold at a tax sale to an individual or to a city or the Commonwealth.

Section 274 of the Tax Code, in effect in 1935, reveals the purpose clearly:

"When real estate is sold to individuals for taxes, or is purchased for the Commonwealth for taxes, the commissioner shall note on his land book the number of acres sold, and to whom, but shall continue the whole tract of land upon his land book in the name of the former owner, until the purchaser obtains a deed therefor, or until the owner shall redeem the same from the Commonwealth. The owner shall not be permitted to redeem the same until he shall produce evidence that he has paid all the taxes due upon said land, which have accrued subsequent to said sale (Code, 1919, section 2283)".

■ Section 274 of the Tax Code of 1930 was repealed by the same act (Acts, 1940, p. 342) which enacted new Code sections 2500 (Acts, 1940, p. 338) and 2503 (Acts, 1940, p. 339). Now section 2500 contains substantially the same language as former section 274 of the Tax Code. It clarifies the former law and specifically directs a continuance of the general practice throughout the state of assessing taxes in the name of a delinquent landowner until the purchaser at a tax sale secures a tax deed in accordance with the statutes. It removes any doubt in the former statutes and exhibits the plain legislative intent.

■ That the owner of the land at the time of the tax sale continues to be the owner until divested of title is shown by Code, 1942, section 2470 (Code, 1887, section 646), which reads in part as follows:

"After the confirmation of the report of sales provided for in the preceding section, the purchaser may enter and hold possession of the real estate purchased by him, if neither the owner nor any one claiming under him be in the actual possession thereof. If, however, such owner, or any one claiming under him, be in actual possession, the purchaser may, by notice in writing, require such owner or claimant to redeem such real estate. * * * "

Likewise, section 71 of the city charter treats the "owner of any real estate so sold" as the owner after the sale with a specific right of redemption within two years from the date of sale. Section 73 provides that after the two years no deed can be made to a purchaser until a four months written notice has been given to such owner, and allows a further period of four months after receipt of such notice for redemption, although the two years have elapsed.

The city charter makes no provisions for redemption by the former owner of the land after the city acquires title thereto, nor does it contain the words "previous owner".

■ The words "previous owner" used in Code, 1930, sections 2491 and 2495 (same sections in Code, 1942) and in Code, 1942, section 2503, are readily explained by reference

to the language of section 274 of Tax Code, 1930, and section 2470 of Code, 1942, hereinabove quoted. The words were employed to distinguish between the person who had a right of redemption and the purchaser of the land at the tax sale.

Properly speaking, the owner of the land at the time of the sale does not become a previous owner until he has been divested of his title. If the purchaser at the sale does not take the prescribed steps to acquire title the original owner remains the owner. The words "previous owner" are loosely employed in the sections mentioned, but their meaning cannot be in doubt.

Section 8 of the Acts, 1906, chapter 52, p. 43 (Code, 1942, section 2497) has no application to the facts in this case. This statute authorizes the Commonwealth to sell lots purchased by it for delinquent taxes which have not been redeemed within four years or more, and provides upon such resale and the performance of certain specified steps, that the lien of all former taxes against such lots shall be cancelled, although the amount realized from the resale be insufficient to pay the amount required to redeem. The statute, of course, assumed that the Commonwealth had taken title to the land (Virginia Code, 1942, section 2490; Code 1887, section 663) by the performance of all necessary prerequisites, whereas, in the case under review the city of Richmond had never obtained a title to the land in question and cannot convey a good title thereto to another.

The question, therefore, who is liable for taxes assessed or assessable on the land during the interval between a sale and the vesting of title in the purchaser, is answered by ascertaining who is the owner of the land during that period. The city as a purchaser has only a lien on the land for the unpaid taxes and interest thereon. The owner has title to the land subject to that lien and the right to redeem from the lien upon the terms specified.

It may be further noted that section 75 of the city charter specifically provides, in the event of the failure of the city

to obtain or record a certificate of sale, that such failure shall not invalidate the lien of the city, but it may, at any time, elect to enforce its lien for taxes in a court of equity and release its rights as a purchaser, or to become a purchaser of such real estate. This is absolutely inconsistent with title and ownership in the city from the date of the tax sale.

The title of land can pass to the city only if a certificate of sale to the city is recorded within sixty days after the expiration of two years from the date of sale. In this case that certificate cannot now issue. The city cannot take title under a deed based on the sale of 1935. It is relegated to the other remedies provided by statute for the collection of the delinquent taxes thereon. It has a lien on the land for the delinquent taxes due thereon and it may bring a suit in equity to subject it to that lien or it may seek to recover the taxes by the alternative methods provided by statute and hereinbefore referred to.

The city, therefore, having no title, cannot pass a good title. A resale of the land by the city would only convey such title as the city has.

The advantages or disadvantages to the landowner or to the city of the method pursued by the city in this case are not in question. They are dependent upon certain circumstances, but in any event those circumstances are not material here. Laws regulating the divesting of title to land are of the greatest importance in this country. The steps prescribed by statute must be strictly pursued. That rule we must follow.

For the foregoing reasons, we are of opinion that the city of Richmond was entitled to recover a judgment for the amount claimed by it. Accordingly, the judgment of the trial court is reversed; and final judgment entered here against the Monument Avenue Development Corporation in favor of the city of Richmond for the amount claimed by it. Virginia Code, 1942 (Michie), section 6365.

*Reversed and final judgment.*