# Wytheville.

## LAURA B. SIMS V. CLENDENNING CAPPER AND MRS. LILLIE I. M. WOODY.

### June 15, 1922.

1. EXCEPTIONS, BILL OF—*Time of Filing—Section 6252 of the Code of 1919—Skeleton Bill of Exceptions—Case at Bar.*—Within sixty days after the final judgment was entered in the instant case, the trial judge signed a skeleton bill of exceptions, in which the evidence was referred to in the usual manner, by the provisions respectively, "(here insert the evidence for the plaintiff)" and "(here insert the evidence for the defendant);" and on the same date the judge made the following endorsement, on the back of a typewritten report of all of the evidence in the case, namely: "Evidence in case of *Laura B. Sims* v. *Clendenning Capper.* Given under my hand and seal this 18th day of June, 1920," and signed this endorsement.

   *Held:* That the clerk by this endorsement was authorized to copy the evidence into the skeleton bill of exceptions, and this brought the case within the requirements of section 6252 of the Code of 1919.

2. APPEAL AND ERROR—*Reversal—Any Evidence to Support Verdict.*—In an action of ejectment where defendants relied upon the defense of adverse possession, the verdict of the jury being for the defendants, it cannot be disturbed on appeal if there was any evidence before the jury sufficient to show title in defendants by adverse possession.

3. ADVERSE POSSESSION—*Mere Possession—Claim of Title—Burden of Proof.*—Title by adverse possession cannot be acquired by mere possession alone, however long continued, unless such possession be accompanied by claim of title for the statutory period. The claim of title is as essential as the possession, and the burden of proof to show both is upon those asserting the acquisition of title by such possession, whether with or without color of title.

4. ADVERSE POSSESSION—*Claim of Title—Express or Implied—Possession Under a Deed.*—Claim of title need not be expressed; it may be inferred from conduct which is unequivocal, and is inconsistent with any other reasonable inference, as, for example, possession held under a deed purporting to convey title is presumed to be with claim of that title.

5. ADVERSE POSSESSION—*Claim of Title—Claim of Ownership of Improvements.*—Possession with mere claim of "ownership of the improvements" is held to be evidence of the absence of the requisite claim of right and title "to the land" upon which to base adverse possession.

6. ADVERSE POSSESSION—*Claim of Title—Possession Under a Mistake.*—
Where the possession is originally taken under a mistake or mis-
apprehension as to the true boundary, this is *prima facie* evidence
of the absence of any hostile claim of title, which has to be overcome
by proof of the existence of a specific intention to claim a hostile
title to the land.

7. ADVERSE POSSESSION—*Claim of Title—Necessity.*—However sought
to be established, whether by showing an express claim of title, or
by proof of conduct from which the inference of claim of title is
sought to be drawn, the fact that the possession was accompanied
by an actual, hostile, claim of title must be made manifest by the
evidence before title by adverse possession can be said to be
established.

8. ADVERSE POSSESSION—*Tacking Possession of Claimant to That of His
Predecessor in Title.*—A claimant of title to land by adverse posses-
sion may tack the period of his possession under claim of title to
the possession under claim of title of his immediate predecessor
in title, in order to complete the statutory period requisite to obtain
title by adverse possession.

9. ADVERSE POSSESSION—*Claim of Title—Case at Bar.*—In the instant
case there was an entire absence of any evidence before the jury of
any probative value tending to establish the fact that the possession
of defendant's predecessor in title was accompanied by any claim
of title to the land, although there was evidence that he "claimed
the buildings." His conduct was, at least, equally consistent with
the mere claim of ownership of the buildings, as with any claim of
ownership of the land. The circumstances under which the buildings
were first erected, and with respect to when and from whom he
acquired possession of the buildings, negatived the idea that his
possession was ever accompanied with any claim of title to the land.
And there was uncontroverted testimony that he, only a short
time before his death, admitted that he claimed no title to the land.
Further, it appeared from his will under which defendants claimed
that he did not undertake to devise any of the land in question,
but merely one of the buildings.

*Held:* That the evidence, without conflict, presented a case of mere
naked possession on the part of defendant's predecessor in title,
without claim of right to the land.

10. BOUNDARIES—*Calls Prevail Over Acreage.*—It is well settled that the
acreage called for by the title papers, while a circumstance to be
considered in identifying the land, is the least reliable of all the
evidences of its true location. Where the boundary lines called for
in the writings evidencing the title are located on the ground in
accordance with such calls, those lines fix the location of the land,
irrespective of the acreage called for in such writings.

11. DEEDS—*Description in Deeds—Oral Evidence to Identify Land—Case
at Bar.*—While it it true that ordinarily some oral testimony is
necessary in aid of the descriptions in various deeds in a chain
of title, in order to identify the land conveyed by the respective

deeds as being located in the particular place in question, it so happens in the instant case that the descriptions of the land conveyed, contained in the respective preceding deeds in the plaintiff's chain of title, are, by the terms employed, so connected with the descriptions of the land conveyed by the deed from the plaintiff's immediate grantor, that it is apparent from a mere reading of such preceding deeds that they embrace the same land. Therefore, oral evidence was not necessary to identify the land.

12. Appeal and Error—*Judgment by Appellate Court—Case at Bar.*— In the instant case, an action of ejectment, the judgment of the lower court was reversed, and the facts before the Supreme Court of Appeals being such as to enable it to attain the ends of justice, it entered a final judgment for the plaintiff, to the effect that the plaintiff was the owner of an estate in fee simple in the land in controversy, with costs; without prejudice, however, to the right of the defendants to apply to the court below for an allowance for improvements, under chapter 225 of the Code of 1919.

Error to a judgment of the Circuit Court of Arlington county, in an action of ejectment. Judgment for defendants. Plaintiff assigns error.

*Reversed and final judgment.*

This is an action of ejectment which resulted in a verdict and judgment for the defendant, and the plaintiff in the court below, Laura B. Sims, brings error. The material facts disclosed by the evidence, without conflict therein, are as follows:

The plaintiff proved a paper record title to the land claimed in the declaration, running back to the Commonwealth, and proved, by evidence, consisting of the testimony of surveyors and the descriptions contained in conveyances in the chain of title, that a portion of such land was in the possession of the defendants in error, who were the defendants in the court below, and will be hereinafter referred to as defendants.

It developed that the defendant, Mrs. Woody, claimed to be the owner of the portion of the land in the possession of the defendants, Capper being merely her tenant.

The land claimed in the declaration is shown on the plat made by R. P. Hough, C. E., dated January 24, 1916, in evidence, reproduced below on a reduced scale, within the lines 1, 2, 3, 4, 5 and 6.

PLAT
Showing HIGH VIEW HOTEL PROPERTY
Mrs Laura B. Sims, Owner
Alexandria Co. Virginia
Jan 24-1916    1" 50    R P Hough C.E.
Clarendon Va

The dwelling and store, the portion of the stable (the greater part being a shed to the stable), included within the lines of the plat, and the land lying between these two buildings, is the land in the possession of the defendants, title to which is involved in this action.

This action was instituted on February 3, 1919.

The defendant, Mrs. Woody, through her tenant, Capper, upon the death of her father-in-law, took possession of the said portion of the property, title to which is involved in this action, less than two years prior to the institution of the action, and held possession of it from that time, through her tenant, Capper, up until the action was brought, claiming title thereto for life, with remainder to her children, under the will of her father-in-law, Edward T. Woody, which bears date November 7, 1917, and was probated in the District of Columbia. The will bears date a short time prior to the death of the testator.

This will, so far as material in this case, contains the following provision:

"I leave to my daugh*tern* law, Lillie I. M. Woody, during life, at death to revert to her children, the * * * house at the south end of Chain bridge in Virgin*a*."

The evidence showed that Edward T. Woody had actual, continuous possession of the aforesaid portion of land, for approximately forty-one years next preceding his death; but the evidence is absolutely silent on the subject of his having ever expressly claimed any title to such land. The only evidence of any express claim of ownership is that one witness for the defendant testified that "he claimed the building, I knew."

It appears both from the testimony for the plaintiff and for the defendants, without conflict, that the building shown on the plat as a stable, was built,

soon after the end of the civil war, by one James W. Walker, under the following permit or license in writing from the mayor of Georgetown, namely:.

"Mayor's Office.   Georgetown, December 30, 1865. Permission is hereby granted to Mr. James Walker to erect a small frame house on the lot belonging to this corporation near the west and south side of Chain bridge unless otherwise prohibited by the corporation.   (Signed) H. Addison, mayor."

This building was occupied by Walker as a dwelling place and barroom until some time in 1876.   The building was, in fact, located on what was supposed to be public property, except a small portion of the building which extended over upon the land afterwards acquired by the plaintiff; and there is nothing in the evidence to show that Walker ever claimed any title to any of the land on which this building was erected, or made any other claim than of the ownership of the building as on land belonging to the public, put there by the permission or license aforesaid.

It appears, also, from such testimony, without conflict, that the building shown on the plat as a dwelling house and store, was built by one Frank Scott, soon after the said building, now designated as a stable, was erected by Walker as aforesaid, under a permit or license from one George Hill, one of the predecessors in title of the plaintiff.   Scott, prior to 1876, sold this building to the said Walker.   There is no evidence tending to show that Scott ever claimed any title to or undertook to sell Walker any land. Walker thereupon took possession of this building also and retained possession of it until some time in 1876.   There is no evidence that Walker ever claimed title to the land on which this building stood.

It appears from the same testimony above mentioned,

and, without conflict, that some time in 1876 Walker sold to the said Edward T. Woody, the aforesaid testator, under whom the defendants claim, both of said buildings. There is no evidence tending to show that Walker undertook to sell to the testator any land. Thereafter, as aforesaid, the testator had actual possession of such buildings continuously until his death; but there is no evidence that he ever claimed any title to the land on which the buildings stood in that vicinity.

Further: The plaintiff introduced testimony, the truth of which was in no way controverted by the evidence for the defendants, that in the year 1916 the said testator presented to an agent of plaintiff the said permit from the mayor of Georgetown and the following receipt from the said Walker, as the only title papers to the said two buildings, held by the testator, namely:

"Received from Mr. Edward T. Woody the sum of $500.00 for a consideration to be expressed in a bill of sale of a two-story frame house with all appurtenances thereto belonging, standing at the end of the Falls bridge in the State of Virginia on a piece of land by permission of Henry Addison, late mayor of Georgetown, bearing date 1865, for which said house I am to execute a bill of sale when required by the said Edward T. Woody. Witness my hand and seal this 3rd day of October, 1876. (Signed) James W. Walker (by his mark) (Seal) Edward Woody, by his mark. John Lintler, witness."

That on this occasion the said testator made an appointment, with the witness for plaintiff who gave the testimony last above referred to (and this also is uncontroverted), to return later and bring his attorney, which he did; and that after the testator and attorney had examined the record title of the plaintiff, the tes-

tator, in the presence of his attorney, admitted that he had no title to the land, and only claimed the buildings.

Other pertinent matters are mentioned in the opinion of the court.

*James Sherier* and *Amos Cameron Crounse,* for the plaintiff in error.

*Crandall Mackey,* for the defendants in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

The first question to be disposed of is raised by a motion of the defendant to dismiss the appeal as improvidently awarded, on the ground that the billof exceptions containing the evidence in the case was not signed by the trial judge within sixty days from the time at which the final judgment was entered, as required by statute (section 6252 of the Code).

[1] On examination of the record we find that the final judgment was entered on April 21, 1920; that on June 18, 1920, within sixty days after the final judgment was entered, the trial judge signed a skeleton bill of exceptions, in which the evidence both for the plaintiff and the defendants was referred to in the usual manner, to-wit, by the provisions, respectively "(here insert the evidence for the plaintiff)," and "(here insert the evidence for the defendant);" and on the same date the judge made the following endorsement, on the back of a typewritten report of all of the evidence in the case, namely: "Evidence in case of *Laura B. Sims* v. *Clendenning Capper.* Given under my hand and seal this 18th day of June, 1920," and signed this endorsement. This was sufficient to identify

the evidence referred to in the skeleton bill of exceptions, and the clerk, in copying the record, was fully authorized thereby to have copied this evidence into the skeleton bill of exceptions.    This, we think, brings the case within the requirements of the statute.

In our view of the case it will be necessary for us to deal with only one of the questions presented for our decision by the assignments of error, and that is this:

1. Have the defendants shown any title to the land in controversy acquired by them, or their predecessors in title, by adverse possession?

The question must be answered in the negative.

[2] The plaintiff has shown a perfect record paper title, traced back to the Commonwealth.    The sole defense of the defendants is that they and their immediate predecessors in title have acquired title to the land in controversy by adverse possession.    The verdict of the jury, being for the defendants, it cannot be disturbed on appeal if there was any evidence before the jury sufficient to show such title by adverse possession.

[3] It is, however, elementary, that, however long the mere possession, no title by adverse possession can be acquired unless the possession be accompanied by claim of title for the statutory period.

The claim of title is as essential as the possession, in order to constitute adversary possession; and the burden of proof to show both is upon those asserting the acquisition of title by such possession, whether with or without color of title.    A mere naked possession, without claim of right, no matter how long continued, never ripens into a good title, but is regarded as being held for the benefit of the true owner.    *Kirk* v. *Smith*, 9 Wheat. 241, 6 L. Ed. 81, 92; *Creekmur* v. *Creekmur*, 75 Va. 430; *Kincheloe* v. *Tracewells*, 11 Gratt. (52 Va.) 587; *Reusens* v. *Lawson*, 91 Va. 236,

21 S. E. 347; *Shanks* v. *Lancaster*, 5 Gratt. (46 Va.) 110, 50 Am. Dec. 108; *Drumright* v. *Hite*, 2 Va. Dec. 465; 26 S. E. 583; Sedgwick & Wait on Trial of Title to Land, sections 745, 755, 756.

[4–7] The claim of title need not be expressed; it may be inferred from conduct which is unequivocal, and is inconsistent with any other reasonable inference, as, for example, possession held under a deed purporting to convey title is presumed to be with claim of that title (*Va. Coal & Iron Co.* v. *Hylton*, 115 Va. 418, 79 S. E. 337, Ann. Cas. 1915A, 741); whereas possession with mere claim of "ownership of the improvements" is held to be evidence of the absence of the requisite claim of right and title "to the land" upon which to base adverse possession. (Sedgwick & Wait on Trial of Title to Land, sec. 756, citing *Davenport* v. *Sebring*, 52 Iowa, 367, 368, 3 N. W. 403); and where the possession is originally taken under a mistake or misapprehension as to the true boundary, this is *prima facie* evidence of the absence of any hostile claim of title, which has to be overcome by proof of the existence of a specific intention to claim a hostile title to the land. (*Christian* v. *Bulbeck*, 120 Va. 74, 90 S. E. 661; Sedgwick & Wait on Trial of Title to Land, sections 759, 760.) But however sought to be established, whether by showing an express claim of title, or by proof of conduct from which the inference of claim of title is sought to be drawn, the fact that the possession was accompanied by an actual, hostile, claim of title must be made manifest by the evidence. *Haney* v. *Breeden*, 100 Va. 781, 784, 42 S. E. 916, and authorities above cited.

[8, 9] In the instant case, the possession of the defendants themselves was accompanied by claim of title; but that possession covered a period of less than two years. To complete the statutory period requisite

to obtain title by adverse possession it was necessary to tack the period of the possession of the defendants to the possession of their immediate predecessor in title, Edward T. Woody. This could be done, and would more than complete the requisite period of possession, if the possession of the latter was accompanied by claim of title to the land, for such possession alone continued unbroken for some forty-one years. But there was an entire absence of any evidence before the jury, of any probative value, tending to establish the fact that Woody's possession was accompanied by any claim of title to the land. The witnesses on the subject admit that they never heard Woody make any express claim of title to the land. One of the witnesses does say that he knew that Woody "claimed the buildings." This of itself, as we have seen, instead of being evidence tending to show a hostile claim of title to the land, was evidence to the contrary. It tended to show that Woody did not claim any title to the land. The conduct of Woody, shown by the testimony for the defendants, is, to say the least, equally consistent with his mere claim of ownership of the buildings under a revocable license from the true owner of the land on which they stand, as with any claim of ownership of the land. And the circumstances under which the buildings were first erected, and with respect to when and from whom Woody acquired the possession of the buildings, as shown by the testimony for the defendants themselves, negative the idea that Woody's possession thereof was ever accompanied with any claim of title to the land. Then, too, there is the uncontroverted testimony for the plaintiff that Woody, only a short time before his death, admitted that he claimed no title to the land, but "only claimed the buildings."

Further: The will of Woody, under which the defendants claim title, when read in the light of the other evidence, furnishes convincing proof that the testator, in truth, did not undertake to devise to defendant, Mrs. Woody, any of the land in controversy, or even to bequeath to her the dwelling and store building thereon, but merely the stable building.    There were two separate buildings on the land in controversy, which were in the possession of Woody up until his death—one the stable, at the south end of the Chain bridge, in Virginia; the other the dwelling house and store, which was not at, but some distance away from, the south end of such bridge.    He attempted by his will to bequeath only one building, to-wit, the "house at the south end of Chain bridge, in Virgina."    And the bequest was of the "house" merely.    As aforesaid, it was not a devise of any land.    This, of itself, when considered in the light of the other evidence in the case, was evidence of the absence of any claim of title on the part of the testator to any of the land in controversy.

The evidence, without conflict, presents a case of mere naked possession on the part of Woody, without claim of right to the land.

The verdict and judgment under review must, therefore, be set aside and annulled.

2. Before concluding this opinion, we will mention certain positions taken in the brief for the defendants.

It is argued for the defendants that the land claimed in the declaration, upon the survey by Hough, as per the plat in evidence, overran the quantity of 5.22 acres, called for in the deeds in plaintiff's chain of title, by 9,844 square feet, and that the jury might have found that the land claimed by the defendants was embraced in this excess quantity of land.

[10] There is no merit in this contention.    It is well

settled that the acreage called for by the title papers, while a circumstance to be considered in identifying the land, is the least reliable of all the evidences of its true location. Where the boundary lines called for in the writings evidencing the title are located on the ground in accordance with such calls, those lines fix the location of the land, irrespective of the acreage called for in such writings.

[11] It is stated in the brief for defendants that "no surveyor, or lawyer, or title examiner, or other person was ever put on the stand to testify as to the identity of the land in controversy, or the 5.22 acres, with the other land with which the chain of title started." The plaintiff introduced two surveyors as witnesses, who testified to the location on the ground of the land claimed in the declaration as conveyed to the plaintiff from her immediate grantor; but it is true that those witnesses did not testify on the subject of tracing that land back, as the same which was included in the preceding deeds in the plaintiff's chain of title; and there was no other oral testimony attempting to do this. It is further true that ordinarily some oral testimony is necessary in aid of the descriptions in various deeds in a chain of title, in order to identify the land conveyed by the respective deeds as being located in the particular place in question. However, it so happens in the instant case that the descriptions of the land conveyed, contained in the respective preceding deeds in the plaintiff's chain of title, are, by the terms employed, so connected with the descriptions of the land conveyed by the deed from the plaintiff's immediate grantor, that it is apparent from a mere reading of such preceding deeds that they embrace the same land.

[12] For the reasons above stated, the judgment

under review will be reversed; and, the facts before us being such as, in our opinion, to enable us to attain the ends of justice, we will enter a final judgment for the plaintiff, to the effect that the plaintiff is the owner of an estate in fee simple in, and that she recover of the defendants, the land in controversy, consisting of the dwelling and store building and that portion of the stable building, included within the lines of the aforesaid plat filed in evidence, and also the land lying between those buildings, with costs; without prejudice, however, to the right of the defendants, if they so desire, to apply to the court below for an allowance for improvements, subject to an assessment of the damages of the plaintiff, and for a suspension of the execution of the judgment, under chapter 225 of the Code, the proceeding, if had, to be governed in all respects by the provisions of that chapter, and for that purpose the judgment entered by us shall be regarded as if it had been entered by the court below.

*Reversed and final judgment.*