# Richmond

## John A. Harris and Rosa L. Harris v. J. Frank Deal, Jr., et als.

June 20, 1949.

Record No. 3488.

Present, All the Justices.

The opinion states the case.

*L. B. Cox* and *J. James Davis*, for the plaintiffs in error.

*James G. Martin & Sons*, for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

This action of ejectment was brought on December 20, 1947, by John A. Harris and Rosa L. Harris against J. Frank Deal, Jr., Sarah L. Deal, Lillie D. Culpepper, Nellie D. Culpepper, and Rosa D. Humphries, to recover forty-

three acres of land in Norfolk county, being a portion of the land conveyed to the plaintiffs by deed of Clyde F. Hill and wife, dated October 20, 1945. The declaration of the plaintiffs alleged that under the said deed they immediately took possession of the land and held it until on or about November 1, 1947, when the defendants entered upon it, enclosed it by a fence and thenceforth unlawfully retained possession, to the damage of the plaintiffs in the sum of $500.

The defendants pleaded the general issue. The plaintiffs then filed a bill of particulars stating that they acquired a fee simple title to the land in question by virtue of a deed from Clyde F. Hill and wife, dated October 20, 1945, and title by adverse possession through the possession of Clyde F. Hill and "prior owners of the said land * * * , by various transfers for many years, * * * under claim of title thereto * * * against all persons for more than fifteen years." Damages were claimed in the sum of $20 per month.

Upon the trial, plaintiffs first offered in evidence, exhibit number 1, their deed of October, 1945, from the Hills. That deed undertook to convey in fee simple to John A. Harris and Rosa L. Harris, husband and wife, as tenants by the entireties, a tract of land in Norfolk county, Virginia, shown on a recorded plat of the "George E. Wood Farm," containing approximately 243 acres and being the same property conveyed to Clyde F. Hill by deed of Grove Land Company, Inc., dated September 1, 1942.

Harris testified that after receiving the deed, he and his wife took possession of the property; that he found the portion involved in this proceeding had been fenced in and a saw mill erected on it; that he talked with J. Frank Deal, Jr., about "sawing some logs out and we made the proposition to half it;" that he told Deal "as long as he would be hauling logs out, he could keep the fence up until I needed the land;" and that Deal made no protest.

Upon a ruling of the court that the deeds in the chain of title beginning with a grant from the Commonwealth in 1860, should be presented separately, the plaintiffs offered

exhibit number 2, a deed from Grove Land Company, Inc., to Clyde F. Hill, dated September 1, 1942, which embraced the land described in exhibit number 1. They then offered exhibit number 3, a deed dated September 1, 1942, from Raymond B. Bridgers, special commissioner, conveying the same land to the Grove Land Company, Inc. This deed recited that it was executed and delivered pursuant to a decree entered on January 28, 1942, in a chancery cause then pending in the Circuit Court of Norfolk county, Virginia, entitled "Commonwealth of Virginia, in its own right and for the benefit of Norfolk county, complainant v. Kerrey Land Company, et als., respondents."

Upon defendants' objection to the introduction of this deed, plaintiffs offered, exhibit number 3-a, the records and papers in the chancery suit above referred to. Defendants renewed their objection to the deed and moved its rejection on the ground that the records and papers in the chancery suit showed that the deed was null and void.

In support of their objection, the court permitted the attorney for the defendants, over the protest of the plaintiffs, to read, as a part of his argument, a report made by a title examiner attacking the validity of the deed because of numerous defects and irregularities in the chancery suit. No exception was taken to the ruling of the court.

Upon examination and consideration of the record in the chancery suit, the court held that the deed to Grove Land Company was null and void. Plaintiffs excepted.

The plaintiffs did not thereafter offer in evidence any deeds in their alleged chain of title prior to the deed from Bridgers, special commissioner, to the Grove Land Company.

The plaintiffs then attempted to establish title by adverse possession. They introduced a witness, Herman Hill, who undertook to show that the property had been in the possession of his brother, Clyde F. Hill, since its purchase in 1942. This witness testified that, in 1944 or 1945, acting for his brother, he had granted J. Frank Deal, Jr.,

permission to put a fence across some woods on his brother's farm to confine his hogs; but that there was no discussion between him and Deal as to the ownership of the land.

Plaintiffs introduced Raymond B. Bridgers, an attorney at law, and the court sustained an objection to his testimony as to the possession of owners with legal title prior to the execution of the deed to the Grove Land Company, Inc., in September, 1942, on the ground that the possession of the prior true owners with legal title could not be linked up with the claim of plaintiffs to adverse possession from 1945, under color of title. No objection was made to this ruling of the court.

For the purpose of the record, however, Bridgers was permitted to testify that J. Frank Deal, Jr., had moved on the land about 1935 or 1936, with permission from the then owner upon the payment of rent.

The plaintiffs contended that the court erred, (1) in holding the deed from Bridgers, special commissioner, to Grove Land Company, Inc., void, and in excluding prior deeds offered by the plaintiffs; (2) in holding that the possession of the owners prior to that deed could not be coupled with adverse possession under or subsequent to their deed; and (3) in permitting the letter of a title examiner to be read by counsel for the defendants during the trial, and to be included in the transcript of the record.

On the other hand, defendants contend that by reason of defects and irregularities in the chancery proceeding, lack of proper parties, and the fact that Raymond B. Bridgers therein acted as attorney for the plaintiffs, commissioner in chancery, and special commissioner, there was lacking due process of law, and the acts of commissioner Bridgers were null and void.

This brings us to a consideration of the record and papers in the suit of *Commonwealth of Virginia, etc.* v. *Kerrey Land Corporation, et als.*

It is apparent that the suit was intended to be brought for the sale of land delinquent for taxes under and by

virtue of Virginia Code, 1942 (Michie), section 2503, as it then stood. Acts of 1940, page 339. This section then contained this language: "The order of reference shall be to the attorney employed by the governing board of the county, city or town, and in the execution of such order such attorney shall have all the powers and duties of a commissioner in chancery."*

That suit was instituted January 9, 1941, by Raymond B. Bridgers, as attorney for the complainant, and a bill was filed with the following caption:

"COMMONWEALTH OF VIRGINIA
in its own right and for the
benefit of Norfolk County,
                    Complainant

v.

KERREY LAND CORPORATION,
George E. Wood, Deceased, J. N.
Baxster, Executor, John E. Corey,
Receiver, T. D. Savage, Trustee,
American Limestone Co., J. W.
Marshall, Federal Land Bank of
Baltimore, Richmond Cedar Works,
C. W. Grandy, C. R. Carr and R. S.
Cahoon, Trustees, Bank of Washington,
Gordon Bean Harvestor Co., Maryland-
Virginia Joint Stock Land Bank,
B. H. Engle, Assignee, Board of
Drainage Commissioners of Norfolk
County, and Parties Unknown,
                    Respondents."

The bill alleged that the Kerrey Land Corporation and George E. Wood, deceased, were the owners of record of

---

*Section 2503 was amended in 1944. Acts of 1944, chapter 318, so that the language in question now reads: "The order of reference shall be to some commissioner in chancery or special master other than the attorney employed to subject the real estate to the lien of any taxes."

the tract of land in Norfolk county, containing 245.9 acres, more or less; that there were two deeds of trust against the property, naming the trustees and beneficiaries; that John E. Corey was receiver for the land corporation; that there were "numerous judgments against the Kerrey Land Corporation, which constituted a lien according to priority"; that there were delinquent State and county taxes and assessments in a large amount, which constituted a first lien on all of the property; and that the rents and benefits from the land would not, in five years, discharge the liens thereon. It did not, in its body, name anyone as a party defendant. It did not aver any interest in, and relation to, the subject matter of the suit, of a number of the persons, companies, and corporations called respondents in its caption. In its conclusion, it merely prayed that "the said parties respondent be made parties respondent," without a reference to its caption; that all proper references and inquiries be made and heard; and that the property be sold and the proceeds be applied to the satisfaction of the taxes and liens.

On January 10, 1941, under the same caption, Bridgers made an affidavit for an order of publication averring "that some of the defendants were non-residents of Virginia." A list of some of the alleged defendants, resident and non-resident, were named; others were omitted, and it is not known whether they were residents or not, no service of process having been served on them.

The clerk of court certified that he posted a copy of the order of publication at the front door of the court house, and mailed copies to the defendants at their last known post office addresses stated in the affidavit. The names of those to whom copies were mailed were not given.

On January 17th, Bridgers filed with the clerk the following affidavit:

"This day before me, Sara Fitzgerald, a Notary Public in and for the City of Norfolk, State of Virginia, whose commission expires August 11th, 1943, appeared Raymond B. Bridgers, Attorney for the plaintiff in the above styled case for

whose benefit the above styled suit in Chancery is instituted, who after being duly sworn made oath that the following are the additional necessary parties to said cause without whom the matter can not be conducted to a final conculsion and full justice done, namely, Mrs. Joshua Baxster, Miss Bessie Wood and Miss Georgia Wood, therefore your complainant prays that Mrs. Joshua Baxster, Miss Bessie Wood and Miss Georgia Wood be made parties defendant to these proceedings."

On the last named date, the court entered an order in accordance therewith, and directed that process issue against Mrs. Baxster and the Misses Wood.

Process was issued on January 20, 1941, summoning Mrs. Joshua Baxster, Miss Bessie Wood and Miss Georgia Wood to appear at the clerk's office of the Circuit Court of Norfolk county, at the rules to be held "on the last Monday in January, 1941, to answer a bill in chancery exhibited against *Them* in the said court by Commonwealth of Virginia in its own right and for the benefit of Norfolk County." This process was executed by personal service on January 25, 1941.

Dated *July 14, 1948*, is a certificate from the business manager of the Portsmouth Star Publishing Corporation, a daily newspaper published in the city of Portsmouth, Virginia, that an order of publication dated July 17, 1941, had been published in his newspaper for four successive weeks commencing January 18, 1941. In the caption of this order of publication there was added the names of Mrs. Joshua Baxster, Miss Bessie Wood and Miss Georgia Wood. Otherwise it was similar to the captions employed in all of the papers in the proceeding.

On December 15, 1941, under the caption of the bill, an order of reference was entered directing Bridgers, attorney for the complainant, to make and take inquiries and accounts showing: (1) "What lands or other property in Norfolk county, Virginia, belong to the defendants, Kerrey Land Corporation, *et als.*; (2) what taxes and liens are due and unpaid on said lands and the order of their priority; and (3) whether all proper, necessary parties defendant were properly before the court."

On January 16, 1942, a report signed by Bridgers as "Attorney for Norfolk County Board of Supervisors," was returned, stating that the Kerrey Land Corporation was the owner of the tract of land described in the bill of complaint, and that there were due and unpaid certain taxes and assessments thereon. Then followed a statement of the deeds of trust mentioned in the bill and a list of eight judgments for various amounts in favor of several creditors; but not showing their priorities, if any. The report stated that all necessary and proper parties were before the court. Depositions of two witnesses were attached therewith showing that they had testified solely as to the fee simple and annual value of the land.

On January 28, 1942, the report was approved and confirmed. The decree held that the legal title to the lands mentioned in the bill stood in the name of Kerrey Land Corporation, and directed that it be sold at public auction for cash by Bridgers, as special commissioner.

On February 10, 1942, Bridgers, special commissioner, reported that the land had been sold to Grove Land Company, Inc., for $750.

On February 26th, the court ratified and confirmed the last report, directed Bridgers, as special commissioner, upon payment of the purchase price, to execute and deliver a deed to the purchaser, and after paying from the proceeds of sale the costs and delinquent taxes, to report his actions to the court.

On August 14, 1942, Bridgers made what he termed a supplemental and amended report as special commissioner. He therein stated that because his former report did "not state conclusively who are the heirs of George E. Wood," he desired to further report that "Mrs. Joshua Baxster, Miss Bessie Wood and Miss Georgia Wood are all the heirs-at-law of the late George E. Wood, deceased."

There is no decree to show that this later report was ever ratified and approved. However, on October 18, 1945, the court again ratified and confirmed the sale and conveyance

of the land to the Grove Land Company. In the meantime, Bridgers, special commissioner, had, by deed dated September 1, 1942, conveyed the land to the purchaser.

■ The bill in the chancery suit does not name any defendants, except by reference to its title. In its title George E. Wood, deceased, is named as a defendant. In its allegations George E. Wood and Kerrey Land Corporation are declared to be the owners of record of the land. It is not stated whether Wood died testate or intestate, married or single, or with or without heirs. Save in the title to the order of publication in the newspaper, the names of Mrs. Baxster and the Misses Wood do not appear in the title to any of the pleadings, reports, decrees, or papers in the case.

The order of publication does not state which of the defendants are nonresidents; but merely states that "some of the respondents are nonresidents of the State of Virginia." Process was not served on some of the persons named in the title of the bill. Whether they were residents or nonresidents is not shown. There is nothing in the order of publication to indicate that the unknown parties referred to are the successors or assigns of the Kerrey Land Corporation, or the heirs of George E. Wood, or what their interests are. It does not give a description of the land or proper notice of its ownership. As to such nonresidents and unknown parties, the order of publication was fatally defective, and the court was without jurisdiction to enter a decree of sale affecting their interest in the property. Virginia Code, 1942 (Michie), section 6070. *Peatross* v. *Gray*, 181 Va. 847, 859, 27 S. E. (2d) 203.

In addition, it will be noted that the certificate of the publication of the order of publication was filed in the proceeding long after the trial in the case and the judgment in the present proceeding.

In the brief of the appellants in this suit, it is admitted that Mrs. Baxster and the Misses Wood, the daughters of George E. Wood, were indispensable parties to the chancery suit. They were served with process on January 25, 1941, sum-

moning them to appear on the *last* Monday in January, 1941, to answer a bill against *them*. They were never named in the caption or in the body of the original bill in the cause. The affidavit to name them parties to the bill does not show the necessity therefor. No amended or supplemental bill was filed against them. There was consequently no allegation in any pleading, process or order showing their interest or relation to the matter in controversy, or any statement of fact which connected them with the issues involved. By the order naming them as parties defendant, the court nominally admitted them as such; but they did not become parties by any amendment of the bill, or any other pleading, or by any averments showing any interest whatever claimed by them in the land involved, nor was there a prayer for relief against them. They did not appear, plead or answer.

It is elementary that every fact essential to the plaintiffs' right to maintain a bill in equity and obtain the relief sought for should be stated in the bill, and that all parties materially interested in the subject matter of the bill should be made parties to the suit. The bill should show that the parties defendant are in some way liable to the plaintiffs' demand, or that they have some interest in the object of the suit. No facts are properly in issue unless charged in the bill.

In *Preston* v. *West*, 55 W. Va. 391, 47 S. E. 152, it was held that naming a person in the caption of a bill as a defendant and serving him with process are not alone sufficient to constitute such person a party to the suit so as to authorize the granting of relief against him. To the effect that a caption is no part of the bill, see 19 Am. Jur., Equity, section 218, and 30 C. J. S., Equity, section 207.

It is necessary to the validity of its judgment that a court must have jurisdiction over the subject matter and over the necessary parties. It has no jurisdiction to act outside the limits of the law or mode of procedure, or beyond the issues in the pleadings. No judicial proceeding can deprive a man of his property without giving him an op-

portunity to be heard in accordance with the provisions of the law, and if a judgment is rendered against him without such opportunity to be heard, it is absolutely void. A void judgment is in legal effect no judgment. By it no rights are divested and from it no rights are obtained. All claims flowing out of it are void. It may be attacked in any proceeding by any person whose rights are affected. *Anthony v. Kasey*, 83 Va. 338, 5 S. E. 176; *Turner v. Barraud*, 102 Va. 324, 46 S. E. 318.

By Virginia Code, 1942 (Michie), section 6102, whenever in any action or suit a non-joinder or misjoinder "shall be made to appear by affidavit or otherwise," new parties may be added to prevent its abatement, "but such new party shall not be added unless it shall be made to appear that he is a resident of this State and the place of such residence be stated with convenient certainty."

In *Wilson v. Wilson*, 93 Va. 546, 551, 25 S. E. 596, this was said:

"A supplemental bill is proper in order to introduce new parties whose interest has arisen since the institution of the suit, to introduce new charges, or to put in issue a new material fact, *such as fraud.*"

"It is well settled in Virginia, that each and every step which the law requires a person, the State, or a political subdivision of the State to take in order to acquire the title to land sold at a tax sale, must be strictly complied with, else the tax sale is invalid, and there is a missing link in the title of a subsequent purchaser." *Richmond v. Monument Avenue Develop. Corp.*, 184 Va. 152, 34 S. E. (2d) 223; *Attkisson v. Moore*, 159 Va. 643, 167 S. E. 367; *Boon v. Simmons*, 88 Va. 259, 13 S. E. 439.

In general, a plaintiff in ejectment must recover solely on the strength of his own title and not on the weakness of that of his adversary. "There is no comparison of titles and the verdict is not rendered in favor of the person having the better title but the plaintiff must show good title in himself, and if he fails to do so the defendant

wins, i. e., the party in possession is left undisturbed. It results, therefore, if the defendant occupying under a claim or color of title can show an outstanding title in a third person he defeats the plaintiff as effectually as if the defendant had that title. * * * The title to be shown by the plaintiff in order to entitle him to recover is either a grant from the Commonwealth connecting himself therewith by a regular chain of title, or such a statement of facts as will warrant the jury in presuming a grant or adverse possession for the statutory period under a claim or color of title. If, however, the plaintiff and defendant claim title from a common source, the plaintiff need not trace his title back of the common source." Burks Pleading and Practice, Third Edition, page 216, *et seq.* Virginia Code, 1942 (Michie), section 5451, *et seq.*, and cases cited.

Bridgers' report, as commissioner in chancery, stated that the Kerrey Land Corporation was the owner of the property. This is admitted to be untrue. The depositions were taken before the commissioner at an unstated time, without any notice in the record. They were taken only as to the value of the property and without evidence as to the ownership of the land, the liens thereon, or their priorities.

In *Bowers* v. *Bowers*, 29 Gratt. (70 Va.) 697, it was held that an attorney employed in a cause is not a competent commissioner to take an account or audit in the cause. In that case there was a clear expression of the rule and its reason. At page 702, this is said:

"That the attorney of one of the parties to a suit cannot be a competent commissioner in that suit, would seem to be too clear for argument. However elevated the counsel may be, his feelings, and even his judgment, will be insensibly influenced by his position, his association and conversation with his client, his witnesses and his friends. No one expects the counsel to be disinterested. It is not desirable he should be so. His allegiance and his duty are to his client. He must give to the latter the best of his ability and his service. And therefore it is, in all the cases involving

this question, it has ever been held that an attorney is incompetent to act as judge, juror, commissioner in chancery, or in any judicial capacity whatever, in a cause in which he is the counsel of one of the parties."

In *Shipman* v. *Fletcher*, 91 Va. 473, 481, 22 S. E. 458, the views expressed in the above case were specifically approved.

In *Fayette Land Co.* v. *Louisville, etc., R. Co.*, 93 Va. 274, 284, 24 S. E. 1016, it was held "error to appoint an attorney for the plaintiff a commissioner to execute an account, for the commissioner acts in a judicial capacity."

Numerous other errors and irregularities in the chancery cause appear, which we will not discuss in view of the conclusion which we have reached. The record in that case shows that its proceedings were so grossly replete with errors, irregularities, defects, omission of vital matters, and the absence of proper parties as to amount to a lack of due process of law.

█ The burden was upon the plaintiffs to show both title and right of possession in themselves. *Sims* v. *Capper*, 133 Va. 278, 286, 112 S. E. 676. This burden they have failed to carry. The court, therefore, did not err in rejecting the deed from Bridgers, special commissioner, to Grove Land Company, Inc., dated September 1, 1942. This rejection caused a gap in the chain of title of the plaintiffs, and the court consequently did not err in excluding the prior deeds which were offered in evidence. Their admission in evidence would not have bridged the gap in the title.

██ The second and third assignments of error are without merit.

Plaintiffs did not except to the exclusion of the evidence relating to adverse possession. In truth, no evidence was produced to show that prior to the claimed possession of the plaintiffs, that is, from October 25, 1945, the date of their deed, there had been an adverse possession of the lands by their grantors, or their predecessors, grounded upon an ouster or dispossession of the real owner. There was

nothing to show that the possession of the land by its prior claimants had been hostile or with an intention to hold adversely. So far as the record discloses, the title and possession of the owners prior to 1942 were rightful and not adverse. George E. Wood, or his heirs, admittedly held legal title and possession at the time of the institution of the chancery suit in 1941. Plaintiffs could not tack their three-years possession to the possession of true owners who held under legal title. Thus, their claim of adverse possession fell short of showing fifteen years of adverse possession necessary under the statute. Virginia Code, 1942 (Michie), section 5805.

As to the last assignment, it appears that the letter of the title examiner was read as a part of the argument of counsel. for defendants. It was not sought to be introduced as evidence. Its contents were used merely as memoranda of the defects and irregularities urged. While plaintiffs' counsel objected to its use, he did not except to the ruling of the court.

In this court, plaintiffs for the first time claim that defendants were tenants at will of Clyde F. Hill and his prior grantees, and consequently were estopped to deny the title of their landlords. This contention was not raised in the bill of particulars of the plaintiffs, nor in their petition and supporting brief for this writ of error. Therefore, it cannot be here raised for the first time. Virginia Code, 1942 (Michie), section 6346, and notes.

The judgment of the trial court is affirmed.

*Affirmed.*

STAPLES, J., concurring.

I concur in the result of the majority opinion, and in its consideration of the question whether the necessary parties were before the court in the collateral suit of *Commonwealth of Virginia, etc.* v. *Kerrey Land Corporation, et als.*, so as to confer upon the court in that suit jurisdiction to enter the decree directing the sale of the real estate here involved.

I further concur in the conclusion reached that by reason of the absence of such parties that court was without such jurisdiction, and the special commissioner's deed referred to conveying said real estate to appellant's predecessor in title is void.

I think, however, that the decision of this question of jurisdiction is all that is necessary and completely disposes of the case. For that reason, I would omit from the opinion any discussion of the validity of the action of the court in that case in referring certain inquiries to the attorney for the Commonwealth who represented the county. This reference to the Commonwealth's Attorney was required by section 2503 of the Code prior to the 1944 amendment of that section. If the reference in said suit was erroneous, it can be only because the former provisions of said Code section requiring such reference were unconstitutional. While the majority opinion does not expressly so hold, it would seem to justify an implication that this provision of the statute was unconstitutional.

No principle of our jurisprudence is better established than that the courts will not declare an act of the General Assembly unconstitutional, either expressly or by implication, unless it is absolutely necessary to do so in order to reach a decision of the case upon its merits. Michie's Digest of Virginia and West Virginia Reports, permanent supp., pp. 268-9. In the case at bar, the circuit court, not having had jurisdiction of the necessary parties, could not have rendered its decree of sale valid even if it had referred the inquiry to an impartial commissioner in chancery. It is clear, therefore, that what is said in the court's opinion on this subject is pure *dictum*, and has no appropriate place in our decision of the case.