162

## CIRCUIT COURT OF HENRICO COUNTY

Kerry I. Scruggs et al.

v.

James H. Harris, Trustee, et al.

August 6, 1987

Case No. 85C148

By JUDGE JAMES E. KULP

In this case the plaintiffs have brought a Declaratory Judgment action to determine their right to an easement across defendants' property. The plaintiffs claim title to a strip of land approximately 123 feet long and 40 feet wide which they purchased at an escheatment sale and received a quitclaim deed therefore in 1984. The strip of land in question is bordered on three sides by property held by the defendant Trustees for Chamberlayne Baptist Church, and the defendants English hold the land bordering the fourth side. The plaintiffs claim an easement of necessity across defendants' land for the beneficial use of their property.

All defendants dispute plaintiffs' claim to title in the subject tract and demand strict proof. Additionally, the Trustees of Chamberlayne Baptist Church have filed a Cross Bill in which they claim title to the subject tract by adverse possession. They pray that a decree be entered declaring that title to the subject property is vested in the church and to remove the cloud to their title.

This matter is before the Court on plaintiffs' second demurrer to the Cross Bill. The Court has also requested the parties to address the Trustees' claim that the escheatment statutes are unconstitutional. The Court has now reviewed the memoranda of law, the statutes involved, and renders this opinion.

## I. *Demurrer*

In the Cross Bill the defendant Trustees claim title to the disputed tract by adverse possession since 1961. These defendants allege that they have had exclusive possession of and exercised dominion over the subject land for approximately twenty-three years. They further allege such possession has been open, hostile, notorious and under a claim of right wholly inconsistent with title in any other person.

The plaintiffs' demurrer, while asserting the Cross Bill fails to state facts upon which relief can be granted, sets forth numerous facts in an attempt to establish that the escheat sale was valid, and that plaintiffs' quitclaim deed gives them title to the subject land.

A demurrer admits the truth of the facts pleaded, and may not allege new facts. The defect in the cross Bill must be apparent upon its face, and if not, the demurrer must fail. The Cross Bill sets forth facts alleging adverse possession, which for purposes of the demurrer must be accepted as true. The Court may not go outside the pleadings and assume plaintiffs took title to the subject property under the quitclaim deed. Accordingly, the plaintiffs' second demurrer is overruled.

The plaintiffs having also filed an answer to the Cross Bill, no additional pleading is necessary to put the parties at issue.

## II. *The Escheatment Statutes*

The defendant Trustees assert that the Virginia scheme of escheatment, Title 55, Chapter 10 (Section 55-168, *et seq.*) is facially unconstitutional under the Due Process clause of the Fourteenth Amendment to the United States Constitution. The thrust of their argument

is that the statutory procedure lacks the fundamental elements of notice and the right to be heard.

At the time of the escheatment procedure through which plaintiffs obtained their quitclaim deed, § 55-172 required the escheator to give notice of the inquest to determine whether land had escheated to the Commonwealth by "advertisement, at the front door of the Courthouse, for thirty days, including the first day of any regular term." This statute was amended in 1982, after the instant inquest, to require advertisement "in a newspaper of general circulation within the county or city once, not more than thirty nor less than seven days, prior to the inquest," in addition to the posting at the Courthouse. *See* Ch. 486, Acts of Assembly of 1982.

The Constitutional issue posed by the defendant is whether the Commonwealth may take title to land under a judicial proceeding where the only pre-hearing notice provided the owners and occupants of the proceeding consisted of posting at the front door of the Courthouse.

The United States Supreme Court has undertaken a review of this issue in a long series of cases commencing with *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), and culminating with *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983).

In *Mullane* the Court rejected the distinction previously found in its decisions concerning the requirements of notice in judicial proceeding depending upon whether the actions were *in rem* or *in personam*. The Court recognized that an adverse judgment *in rem* directly affected the property owner by divesting him of his rights in the property. The Court concluded that prior to an action which would affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314.

Observing that "[w]here the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mail to apprise them of its pendency," 339 U.S. at 318, the Court in *Mullane* held that newspaper advertise-

ment of an action to settle the accounts of a pooled trust fund was insufficient to inform beneficiaries of the trust whose names and addresses were known.

Likewise, in *Walker v. City of Hutchinson*, 352 U.S. 112 (1956), the Court was called upon to determine whether publication in a newspaper was sufficient notice for a city to condemn property. Relying upon the principle enunciated in *Mullane*, the Court held that "if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests." *Id.*, at 115. The Court found the notice through the newspaper to be inadequate to inform a landowner whose name was known to the city and was on the official records.

In *Schroeder v. New York City*, 371 U.S. 208 (1962), New York City wanted to divert water from the Neversink River. The notice to the riparian property owners of the condemnation proceedings consisted of newspaper advertisement in four different newspapers, and the posting of handbills in the vicinity of the real estate to be affected. The Court held that this extensive notice was not sufficient to apprise an affected property owner of the condemnation proceedings when his name and address were readily ascertainable from both deed records and tax rolls.

The factual circumstances in this case now before this Court are strikingly similar to those in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983). There the landowner executed a mortgage in favor of Mennonite to secure a debt. This mortgage was recorded in the county recorder's office. The agreement called for the landowner to pay all property taxes. Without the knowledge of Mennonite, the landowner failed to pay taxes on the property.

Under Indiana law, real property may be sold if the property taxes are delinquent for fifteen months or longer. Prior to the sale, notice must be posted at the Courthouse and published once a week for three consecutive weeks. Additionally, the owner of the property is notified by certified mail to his last known address. The statutes provide that after the required notice, the land is sold to the highest bidder. The tax sale is followed by a two-year redemption period during which the landowner or other interested parties may redeem the property. If the property is not redeemed, the purchaser

may apply for a deed to the property and initiate an action to quiet his title to the property.

In *Mennonite* the statutory requirements as to notice were complied with, including the mailing of notice to the landowner. No notice, however, was given to the mortgagee either by the county or the landowner. The property was sold, and when the property was not redeemed within the statutory two year period, the purchaser obtained a deed to the property.

During a suit to quiet title to the property, the mortgagee contended that it had not received constitutionally adequate notice of the pending tax sale and the opportunity to redeem the property following the tax sale. The Indiana courts rejected the mortgagee's constitutional argument.

The Supreme Court, relying once again on *Mullane*, held that the notice was inadequate to apprise the mortgagee of the pending tax sale. The mortgagee had a legally protected property interest and was entitled to adequate notice of the tax sale. "When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." 462 U.S. at 798.

In this long line of cases, the Supreme Court has never wavered from the general principle announced in *Mullane* that notice by publication is not sufficient with respect to a person whose name and address are known or easily ascertainable when that person's legally protected interest is directly affected by the proceeding in question. Now to apply the *Mullane* principle to the case presently before the Court.

The Court is of the opinion that the notice requirements provided for in § 55-172, even after the 1982 amendment, do not meet the requirements of the Due Process Clause of the Fourteenth Amendment as applied to the landowner of record and an identifiable mortgagee of record. Notice of escheat proceedings must be mailed to these persons in order to meet the minimum requirements established by the Supreme Court in *Mullane*.

The Trustees assert that they were [given?] due notice of the escheat inquest and sale in this case even though they were not the landowner of record or an identifi-

able mortgagee. Their argument is that Chamberlayne Baptist Church was known or could reasonably have been known to the County as the occupant of the disputed property since 1961.

Whether Chamberlayne baptist Church was known or could reasonably have been known by the County as the occupant of the disputed property in order to be entitled to notice will be the subject of proof. The burden of proof on this issue will rest upon the Church.

Some observations on this matter may be helpful. In every decided case, the Supreme Court has found that the persons entitled to notice were those whose names appeared on the public record or whose identity was known. The Court has made clear "that a governmental body is [not] required to undertake extraordinary efforts to discover the identity and whereabouts of a [person] whose identity is not in the public record." *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798 n. 4 (1983).

In this Court's opinion, nothing in the Supreme Court's opinions would require the county or the escheator to make a visual inspection of the property subject to escheat to ascertain if someone other than the record owner was in possession of the subject property. To require in inspection of every piece of property subject to escheat would not only be unreasonable and burdensome, but in most instances would not prove fruitful. For example, a visual inspection may show land which is fenced, well maintained, and contains structures. None of these things, however, would necessarily reveal that the property is occupied by anyone other than the owner. *See also Pruitt v. Ferguson*, 224 Va. 507 (1982).

The Supreme Court of Virginia has itself shown great deference for the rights of property owners and has insisted on strict adherence to the procedural requirements in judicial sales. *See, i.e., Forrer v. Brown*, 221 Va. 1098 (1981); *Harris v. Deal*, 189 Va. 675 (1949); *Richmond v. Monument Avenue Development Corp.*, 184 Va. 152 (1945).

In *Forrer v. Brown, supra*, a certain parcel of land was sold for delinquent real estate taxes and was purchased by Ned Brown. The sale was confirmed by the Court and a deed to the property was delivered to Brown. Brown did not record his deed nor did he pay taxes on the property. A second sale was held for delinquent taxes, but Brown

was not listed in the caption of the bill as a party defendant nor was he referred to in the body of the pleading. Notice was given as required by statute, but no notice was given to Brown.

At the second sale the parcel was purchased by Thomas Forrer. Forrer received a deed to the property which he failed to record. Like Brown, Forrer failed to pay the taxes and a third sale was had. This time notice was given to Brown but not to Forrer. Brown thereupon paid the delinquent taxes and received a special warranty deed which he recorded. Forrer thereafter brought a suit against Brown to remove the cloud on his title.

The Court stated the dispositive issue to be "whether Brown was properly made a party to the second suit." *Id.*, at 1106. Concluding that Brown had not received reasonable notice of the second sale, the Court held that the sale was invalid to affect Brown's interest in the property. A prudent title examiner, preparing the order of publication for the second tax sale, would have discovered the former tax sale in which Brown had received a deed to the same parcel. Brown therefore being in the record chain should have received notice. *See Pruitt v. Ferguson, supra,* 224 Va. at 512.

In the present case, plaintiffs claim title to the disputed tract through a quitclaim deed which was obtained through an escheatment sale. The burden, therefore, is upon plaintiffs to show both title and right of possession in themselves. *Harris v. Deal, supra.* To carry this burden, the plaintiffs must show that the statutory requirements of the sale, including the notice requirements of *Mullane*, were strictly followed. Otherwise the sale was invalid, and there is a missing link in the plaintiffs' title.

Plaintiffs maintain that the Trustees have no standing to raise the constitutional issue being asserted since they were not in the record chain. Therefore, whatever rights of notice the record owners of the disputed tract may have had, the Trustees cannot assert it. The Court is aware of the general proposition that a party cannot assert the constitutional rights of others. In this case, however, the Trustees have demonstrated a concrete stake in the outcome of the suit. The Trustees allege in the Cross Bill that the Church has built and maintained expensive improvements on this subject property and has occupied

the property since 1961. The Church faces severe and immediate injury should plaintiffs prevail in this action. The Church has a personal stake in the outcome of the controversy, and the Court is of the opinion standing has been shown to raise the constitutional issue. *See Baker v. Carr*, 369 U.S. 186 (1962).

The Court requests Mr. Majette to prepare an order overruling the plaintiffs' second demurrer.